IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IOWASKA CHURCH OF HEALING,<br>4114 – 27th Street<br>Des Moines, IA 50310 | ) ) ) ) | Civil Case No. 1:21-cv-02475 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, and<br>CHARLES P. RETTIG, *in his official capacity*<br>*as* Commissioner of Internal Revenue,<br>1111 Constitution Avenue NW<br>Washington, DC 20224 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' RESPONSE TO IOWASKA CHURCH OF HEALING'S
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7(h)(2), the Defendants hereby submit the following response to Iowaska Church of Healing's statement of material facts, with references to the administrative record:

1. The Church was incorporated as an Iowa non-profit corporation on September 24, 2018. (APP. 0039-0048, Articles of Incorp.).

   **Response:** Admitted. J.A. Ex. 3.

2. The Church was organized as a religious corporation under Iowa Code § 504.141(38) (2021). (APP. 0066, Bylaws at P. 18).

   **Response:** Admitted. J.A. Ex. 4 at 19.

3. The Church has been registered to do business in the State of Florida since March 19, 2019. (APP. 0205-0206, FL Regis.).

   **Response:** Admitted. J.A. Ex. 7 at 52–53.

1

4.  The Church was organized to operate a church for its members, and its mission is to inspire individuals to seek and embrace authentic, self-realized healing of the mind, body and spirit through the ceremonial use of the sacred, indigenous plant-medicine of Ayahuasca. (APP. 0015, 1023 Statement at P. 1).

    **Response:** This is an assertion of law and not of fact, and legal conclusions do not belong in statements of fact. *See, e.g.*, *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *Chin v. Garda CL New England, Inc.*, 2017 WL 3526253, at *2 (D. Mass. Aug. 16, 2017); *King v. Bernabei,* 2015 WL 1506063, at *2 (N.D. Ill. Mar. 24, 2015); *Abney v. Univ. of Virgin Islands*, 2013 WL 12354494, at *6 (D.V.I. Apr. 15, 2013). To the extent a response is required, admitted that this is Iowaska Church of Healing's stated purpose when applying to the Service for tax-exempt status. J.A. Ex. 5 at 1. Iowaska's Bylaws and Articles of Incorporation speak for themselves. J.A. Ex. 3; J.A. Ex. 4.

5.  The Church wishes to offer the public access to spiritual growth, development and healing through the sacred Sacrament of Ayahuasca provided under the guidelines of North and South American Indigenous traditions and cultural values. *Id.*

    **Response:** Admitted. J.A. Ex. 5 at 1.

6.  The use of Ayahuasca originates from the Amazon and represents the basis of spiritual practice for at least 75 different indigenous tribes across the lower and upper Amazonian regions, who use Ayahuasca for medicinal, spiritual and divinatory purposes. (APP. 0016, 1023 Statement at P. 2).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 2.

7. The plants used in the preparation of Ayahuasca have been used for millennia, and official, representative religions began to appear 90 years ago, which are referred to under the Churches of Santo Daime, Uniao do Vegetal and Barquinha. *Id.*

   **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 2.

8. Official Ayahuasca churches first appeared in Brazilian Amazonian cities and have since spread to Europe, the United States and Asia. *Id.*

   **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 2.

9. The religious use of Ayahuasca within these churches blends different elements of Christianity, afro-Brazilian religions and indigenous shamanism. *Id.*

   **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 2.

10. Membership in the Church is available to all those who approach it with the sincere intention to become part of a spiritually directed community in which all members live by a code of love, unity, integrity and respect for all living things, and who sincerely seek a deeper relationship with Self, with Spirituality and with the living Spirit of Mother Earth. (APP. 0018, 1023 Statement at P. 4).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4.

11. Prospective members of the Church are required to complete and return an application form, which is reviewed by the Church's President and Vice President (the Church's lead healers). (APP. 0018, 1023 Statement at P. 4); (APP. 0161, Response to 1st Information Request at P. 7).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4.

12. A prospective member's responses to the membership application must echo sincerity of thought and spiritual reflection, indicating an earnest desire to be a part of a growing

spiritual community in which each member is seeking personal growth, and the

applicant's personal need for spiritual healing is also considered. *Id.*

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4.

13. The Church's leaders and Board of Directors reserve the right to assess, discuss, vote and

    if necessary, terminate the membership and involvement of any individual who

    disregards the Church Doctrine and the Universal Laws of respect, integrity, harmony,

    love and light. (APP. 0018, 1023 Statement at P. 4).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4.

14. During the Church's religious ceremonies, the Sacrament of Ayahuasca is consumed in

    the form of a tea brewed using water and two plants that are indigenous to the Amazon

    Rainforest. (APP. 0025, 1023 Statement at P. 11).

    **Response:** Admitted. J.A. Ex. 5 at 11.

15. One of the plants used to make Ayahuasca tea contains Dimethyltryptamine, which is a

    hallucinogenic Schedule I drug under the federal Controlled Substances Act, 21. U.S.C.

    §§ 801 et seq. ("CSA"). *Id.*

    **Response:** Admitted. J.A. Ex. 5 at 11.

16. In order to receive the Sacrament of Ayahuasca during the Church's religious

    ceremonies, individuals must apply and be approved for membership, and agree to

    comply with the Rules and Regulations for Participating in the Sacrament of Ayahuasca.

    (APP. 0018, 1023 Statement at P. 4); (APP. 0121-126, Rules and Regulations); (APP.

    0050, Bylaws at P. 2).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4–5.

17. Besides the receipt of the Sacrament of Ayahuasca, the Church's religious ceremonies also include sacred prayers, singing, music, smudging, reflections and readings from the Ayahuasca Manifesto, which is the foundation of the Church's religious doctrine.  (APP. 0017, 0019, 0023, 1023 Statement at pp. 3, 5, 9); (APP. 0069-118, Ayahuasca Manifesto).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 5–9.

18. The Church's doctrine and literature also include the Universal Laws of Respect.(APP. 0015, 1023 Statement at P. 1); (APP. 0119-120, Universal Laws of Respect).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 1.

19. The Church's ceremonies are generally held on weekends, taking place on Friday, Saturday and Sunday, and typically consist of two evening ceremonies and the option for a daytime ceremony. (APP. 0020, 1023 Statement at P. 6).

    **Response:** Denied that this is a material fact. Admitted that ceremonies are generally held on weekends, taking place on Friday, Saturday and Sunday, and typically consist of two evening ceremonies and the option for a daytime ceremony. J.A. Ex. 5 at 6. Aver that ceremonies do not occur every weekend. J.A. Ex. 12 at 4.

20. Sunday ceremonies also include member "Integration", which provides members the chance to openly share their spiritual experiences with the Sacrament of Ayahuasca and to receive guidance from the mental health counselors, healers, facilitators and spiritual coaches present. (APP. 0019, 1023 Statement at P. 5).

    **Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 5.

21. Members who do not attend weekend ceremonies in person can still participate during Sunday Integration virtually through telephone or video call. (APP. 0158-159, Response

to 1st Information Request at pp. 4-5).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 4–5.

22. The Church's members remain in frequent contact with the Church's healers through telephone and e-mail support in order to help guide them through their daily struggles both before and after they attend and participate in ceremonies. (APP. 0218, Resp. to 2d Information Request at P. 4).

**Response:** Admitted. J.A. Ex. 5 at 11.

23. The Church originally intended to purchase land in the State of Iowa upon which to build a permanent worship facility and related structures, with Florida as a potential secondary location. (APP. 0023, 1023 Statement at P. 9).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 5 at 9. Aver that Iowaska never established a permanent facility in Iowa. J.A. Ex. 12 at 3.

24. The Church and its counsel later determined that it would be prudent to first establish a physical location in Florida until there is greater clarity with respect to Iowa law, which, unlike Florida, does not have a state-level version of the federal Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb, et seq. (APP. 0156-157, Response to 1st Information Request at pp. 2-3).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 7 at 2–3.

25. After its organization, the Church had as many as 20 members, four of whom attended ceremonies on multiple weekends. (APP. 0160, Response to 1st Information Request at P. 6).

**Response:** Admitted. J.A. Ex. 7 at 5–6.

26. Many of the Church's members live in different states and several in foreign countries. (APP. 0218, Response to 2d Information Request at P. 4).

    **Response:** Admitted. J.A. Ex. 9 at 4.

27. The Church conducted weekend ceremonies at the same location in Florida during the months of May, June, July and August of 2019. (APP. 0160-161, Response to 1st Information Request at pp. 6-7); (APP. 0238, Response to 3d Information Request at P. 4).

    **Response:** Denied. The cited material does not support the contention in this paragraph. Aver that the protest sent from plaintiff's representative to IRS, dated July 13, 2020, in the administrative record establishes that five ceremonies were held over three weekends in May, June, and July of 2019. J.A. Ex. 14 at 2.

28. No ceremonies have taken place in Florida, or elsewhere, since the last ceremony was held on August 18, 2019. (APP. 0238, Response to 3d Information Request at P. 4).

    **Response:** Denied that this is a material fact. The cited material does not support the contention in this paragraph. Aver that the protest sent from plaintiff's representative to IRS, dated July 13, 2020, in the administrative record establishes that five ceremonies were held over three weekends in May, June, and July of 2019. J.A. Ex. 14 at 2.

29. The Church voluntarily suspended all of its ceremonies while it awaited its § 501(c)(3) Determination Letter and DEA religious exemption. *Id.*

    **Response:** Admitted. J.A. Ex. 11 at 5.

30. The Church and its members were concerned with the delays related to the Church's governmental applications and were fearful of possible law enforcement intrusion into their sacred ceremonies and potential criminal prosecution for performing ceremonies

before receiving the respective approvals. *Id.*

**Response:** Admitted. J.A. Ex. 11 at 5.

31. In addition to the Church's religious ceremonies and ongoing Integration activities, it will conduct workshops providing education on sacred Indigenous cultures and practices involving the use of Ayahuasca as a healing medicine and spiritual tool, and offer educational events for the public including, but not limited to, group meditations, Mother Earth (Pachamama) devotionals, and spiritual, emotional and physical wellness events. (APP. 0027, 1023 Statement at P. 13).

    **Response:** Admitted. J.A. Ex. 5 at 13.

32. The Church also intends to raise awareness of local Native American tribes as well as South American and Amazonian tribes. *Id.*

    **Response:** Admitted. J.A. Ex. 5 at 13.

33. The Church will offer veterans of the United States Armed Forces the ability to participate in its religious ceremonies, Integration, group therapy and other healing activities for free or at a reduced cost, and has contacted a number of veteran relief organizations to develop cooperative arrangements with them including Wounded Warrior Project, Veterans of Foreign Wars and the United States Department of Veterans Affairs. *Id.*

    **Response:** Admitted. J.A. Ex. 5 at 13.

34. The Church also maintains a website which contains information about its activities, beliefs and doctrines, and the use of Ayahuasca in religious ceremonies, which is located at www.iowaskachurchofhealing.com. (APP. 0215, Response to 2d Information Request

at P. 1).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 9 at 2.

35. On January 10, 2019, the Church filed IRS Form 1023 requesting recognition as an
organization described in § 501(c)(3) of the Internal Revenue Code of 1986, as amended
(I.R.C.), and, specifically, as a church within the meaning of I.R.C. § 170(b)(1)(A)(i).
(APP. 0001-0148, Form 1023).

**Response:** Admitted. J.A. Ex. 2.

36. On February 28, 2019, the Church filed a request for a religious exemption from the CSA
with the United States Drug Enforcement Administration's ("DEA") Diversion Control
Division in Springfield, Virginia, which has not yet been granted. (APP. 0221-225, DEA
Religious Exemption Application).

**Response:** Admitted. J.A. Ex. 7 at 9.

37. By their First Information Request dated July 3, 2019, Defendants requested additional
information with respect to the Church's Form 1023. (APP. 0150-154, IRS Information
Request #1).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 6.

38. The Church timely responded to the First Information Request on July 25, 2019. (APP.
0155-204, Response to 1st Information Request).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 7.

39. Defendants issued a Second Information Request dated September 10, 2019, in which
they questioned the legality of the Church's ceremonial use of Ayahuasca under federal
and state law without first having received an exemption from the CSA by the Diversion

Control Division of the DEA. (APP. 0210-214, IRS Information Request #2).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 8 at 4.

40. In its October 4, 2019 response to the Second Information Request, the Church cited the
2006 United States Supreme Court ruling styled *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), in which both the Supreme Court and Defendant United States acknowledged that the sacramental use of Ayahuasca is a sincere exercise of religion under the First Amendment to the United States Constitution. (APP. 0215-216, Response to 2d Information Request at pp. 1-2).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 9 at 2–4.

41. Defendants issued a Third Information Request dated February 4, 2020, in which they again questioned the legality of the Church's ceremonial use of Ayahuasca without first having received an exemption from the CSA by the Diversion Control Division of the DEA. (APP. 0235, IRS Information Request #3 at P. 3).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 10 at 3.

42. In its February 24, 2020 response to the Third Information Request, the Church reiterated the controlling precedent of *O Centro* and reminded Defendants that there was no evidence in the *O Centro* opinion suggesting that the church at issue had even applied for an exemption from the CSA. (APP. 0239-240, 0242, Response to 3d Information Request at pp. 1-2, 4).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 11 at 2–5.

43. Defendants issued a proposed adverse determination letter of June 16, 2020 to the Church, stating that they intended to deny the Church's application for recognition as an

I.R.C. § 501(c)(3) charitable organization and as a church within the meaning of I.R.C. § 170(b)(1)(A)(i). (APP. 0268-279, Proposed Adverse Determination).

**Response:** Admitted. J.A. Ex. 12 at 8–11.

44. In Defendants' proposed adverse determination letter denying the Church I.R.C. § 501(c)(3) status, Defendants stated that the Church's activities are illegal because it had not received a CSA exemption from the DEA or sought relief in the courts. (APP. 0278, Proposed Adverse Determination at P. 11).

**Response:** Admitted. J.A. Ex. 12 at 11.

45. In its proposed adverse determination letter issued to the Church, Defendants affirmatively stated that the church in the *O Centro* case was, "an organization with activities strikingly similar to your own." (APP. 0276, Proposed Adverse Determination at P. 9).

**Response:** Denied that this is a material fact. Admitted as to substance. J.A. Ex. 12 at 9.

46. At the time of the *O Centro* litigation, the New Mexico church at issue was recognized as an organization described in I.R.C. § 501(c)(3) and as a church described in I.R.C. § 170(b)(1)(A)(i)[1], and it still maintains this status. (APP. 0280, O Centro - IRS website).

**Response:** The Administrative Record does not support the contention in this paragraph and Plaintiff has provided no citation to the Administrative Record. Pursuant to 26 U.S.C. § 7428(a), the United States Tax Court, the United States Court of Federal Claims, and the United States District Court for the District of Columbia are conferred concurrent jurisdiction to review the final determination of the Secretary of Treasury regarding an entity's tax-exempt status under Section 501(c)(3). *Educ. Assistance Found.*, 111 F.

---

[1] Memorandum in Opposition to Petition for a Writ of Certiorari at ii, *Gonzales v. o Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006).

Supp. 3d at 38; *see also Fund for Study of Econ. Growth and Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15, 18 (D.D.C. 1998), *aff'd,* 161 F.3d 755 (D.C. Cir. 1998). The Court's review is *de novo* and limited to the administrative record. *Fam. Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting *Arlie Found.*, 283 F. Supp. 2d at 61–62). To the extent a response is required, admitted that the Internal Revenue Service website maintains a database of all tax-exempt organizations. https://apps.irs.gov/app/eos/. Admitted that O Centro Espírita Beneficente União do Vegetal appears in this database as of June 3, 2022.

**Response to Footnote 1:** There are no assertions in the footnote. To the extent a response is required, admitted.

47. On October 8, 2020, an Ayahuasca church named Sanctuary of Our Lady Ayahuasca, located in Arizona, was granted tax-exempt status under I.R.C. § 501(c)(3) and further classified as a church under I.R.C. § 170(b)(1)(A)(i), and still maintains this status. (APP. 0281, Sanctuary of Our Lady Ayahuasca § 501(c)(3) Det.); (APP. 0282-283, Sanctuary of Our Lady Ayahuasca - IRS website).

**Response:** The Administrative Record does not support the contention in this paragraph and Plaintiff has provided no citation to the Administrative Record. Pursuant to 26 U.S.C. § 7428(a), the United States Tax Court, the United States Court of Federal Claims, and the United States District Court for the District of Columbia are conferred concurrent jurisdiction to review the final determination of the Secretary of Treasury regarding an entity's tax-exempt status under Section 501(c)(3). *Educ. Assistance Found.*, 111 F. Supp. 3d at 38; *see also Fund for Study of Econ. Growth and Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15, 18 (D.D.C. 1998), *aff'd,* 161 F.3d 755 (D.C. Cir. 1998).

The Court's review is *de novo* and limited to the administrative record. *Fam. Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting *Arlie Found.*, 283 F. Supp. 2d at 61–62). To the extent a response is required, admitted that the Internal Revenue Service website maintains a database of all tax-exempt organizations. https://apps.irs.gov/app/eos/. Admitted that Sanctuary of Our Lady Ayahuasca, Inc., appears in this database as of June 3, 2022.

48. The tax-exempt status of the church in the O Centro opinion and Sanctuary of Our Lady Ayahuasca is a matter of public record, and can be searched using the Internal Revenue Service's website under the "Tax Exempt Organization Search" function located at https://apps.irs.gov/app/eos/.

**Response:** The Administrative Record does not support the contention in this paragraph and Plaintiff has provided no citation to the Administrative Record. Pursuant to 26 U.S.C. § 7428(a), the United States Tax Court, the United States Court of Federal Claims, and the United States District Court for the District of Columbia are conferred concurrent jurisdiction to review the final determination of the Secretary of Treasury regarding an entity's tax-exempt status under Section 501(c)(3). *Educ. Assistance Found.*, 111 F. Supp. 3d at 38; *see also Fund for Study of Econ. Growth and Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15, 18 (D.D.C. 1998), *aff'd,* 161 F.3d 755 (D.C. Cir. 1998). The Court's review is *de novo* and limited to the administrative record. *Fam. Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting *Arlie Found.*, 283 F. Supp. 2d at 61–62). To the extent a response is required, admitted that the Internal Revenue Service website maintains a database of all tax-exempt organizations. https://apps.irs.gov/app/eos/.

49. The Church timely filed its protest of Defendants' proposed adverse determination letter on July 13, 2020. (APP. 0284-303, Protest).

    **Response:** Admitted. J.A. Ex. 14.

50. By letter dated September 1, 2020, Defendants denied the Church's protest of the decisions reached in the proposed adverse determination letter and notified the Church that its case was being forwarded to the Office of Appeals. (APP. 0304-309, Denial of Protest).

    **Response:** Admitted. J.A. Ex. 15.

51. On April 1, 2021, a telephonic IRS Appeals conference was held between the Church, the Church's counsel and Daniel Frisch of the Internal Revenue Service. (APP. 0310-311, Appeals Conference Notice).

    **Response:** Denied. The cited material does not support the contention in this paragraph. Aver that a conference was scheduled for April 1, 2021, but the cited material does not confirm that a conference was held or who was present on the conference. J.A. Ex. 17.

52. In their final adverse determination letter dated June 28, 2021, Defendants maintained their position that the Church's activities are illegal because it had not received a CSA exemption from the DEA or sought relief in the courts. (APP. 0313-324, Final Adverse Determination).

    **Response:** Admitted. J.A. Ex. 18.

*(Signature block on the following page.)*

Dated: July 1, 2022

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Emily K. Miller*
EMILY K. MILLER (KY #97725)
KRISTINA M. PORTNER (DC #1002793)
JOSEPH E. HUNSADER (DC #453328)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-7509 (v)
202-514-6866 (f)
Emily.K.Miller@usdoj.gov
Kristina.M.Portner@usdoj.gov
Joseph.E.Hunsader@usdoj.gov
*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those parties registered to receive it.

*/s/ Emily K. Miller*
EMILY K. MILLER
Trial Attorney
United States Department of Justice, Tax Division