IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IOWASKA CHURCH OF HEALING, | ) | Civil Case No. 1:21-cv-02475 |
| 4114 – 27th Street | ) | |
| Des Moines, IA 50310 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, and | ) | |
| CHARLES P. RETTIG, *in his official capacity* | ) | |
| *as* Commissioner of Internal Revenue, | ) | |
| 1111 Constitution Avenue NW | ) | |
| Washington, DC 20224 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND
MEMORANDUM IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   BACKGROUND ........................................................................................... 1

    A.   EXEMPT ORGANIZATIONS UNDER 26 U.S.C. § 501(C)(3) ..................................... 1

    B.   FACTUAL BACKGROUND .................................................................................. 2

II.  THE COURT SHOULD DENY SUMMARY JUDGMENT FOR THE PLAINTIFF
AND GRANT SUMMARY JUDGMENT FOR THE DEFENDANTS AS TO COUNT ONE
BECAUSE IOWASKA CHURCH OF HEALING IS NOT ENTITLED TO TAX-EXEMPT
STATUS. ......................................................................................................... 6

    A.   THE SERVICE CORRECTLY DETERMINED THAT IOWASKA CHURCH OF HEALING WAS NOT

    ENTITLED TO TAX-EXEMPT STATUS UNDER SECTION 501(C)(3)..................................... 6

    B.   IN THE ALTERNATIVE, EVEN IF IOWASKA IS AN EXEMPT ORGANIZATION UNDER SECTION

    501(C)(3), THE SERVICE CORRECTLY DETERMINED THAT IOWASKA CHURCH OF HEALING DOES

    NOT QUALIFY AS A CHURCH AS DEFINED IN SECTION 170(B)(1)(A)(I). ...................................... 11

III. THE COURT SHOULD DENY SUMMARY JUDGMENT FOR THE PLAINTIFF
AND GRANT SUMMARY JUDGMENT FOR THE DEFENDANTS AS TO COUNT
TWO. ............................................................................................................ 16

    A.   IOWASKA LACKS STANDING TO ASSERT A RFRA CLAIM. ..................................... 16

    B.   DEFENDANTS HAVE NOT VIOLATED THE RFRA, AS IOWASKA MISREPRESENTS THE

    HOLDING IN *GONZALEZ V. O CENTRO ESPÍRITA BENEFICENTE UNIÃO DO VEGETAL*. ................... 19

IV.  CONCLUSION .......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Comm'r of Internal Revenue*, 170 F.3d 173 (3d Cir. 1999). ........................................... 23

*Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187 (10th Cir. 2018). ........................... 17

*Am. Guidance Found., Inc. v. United States*, 490 F. Supp. 304 (D.D.C. 1980). ......................... 13

*Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58 (D.D.C. 2003). ....................... 1, 2, 11

*Better Bus. Bureau of Washington, D.C. v. United States,* 326 U.S. 279 (1945). ................... 7, 10

*Bob Jones Univ. v. United States*, 461 U.S. 574 (1983). ....................................... 1, 8, 10

*Branch Ministries v. Rossotti*, 211 F.3d 139 (D.C. Cir. 2000). .................................... 22

*Church of Eternal Life & Liberty, Inc. v. Comm'r of Internal Revenue*, 86 T.C. 916 (1986). ..... 13

*Church of Visible Intelligence that Governs the Universe v. United States*, 4 Cl. Ct. 55 (Cl. Ct. 1983). ...................................................................................... 7

*Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 111 F. Supp. 3d 34 (D.D.C. 2015). ......................................... 1, 2, 7

*Fam. Tr. of Mass., Inc. v. United States*, 892 F. Supp. 2d 149 (D.D.C. 2012). ................... 2, 9, 10

*Found. of Hum. Understanding v. United States*, 88 Fed. Cl. 203 (2009), *aff'd*, 614 F.3d 1383 (Fed. Cir. 2010). ........................................................................ 12, 13, 14

*Freedom Church of Revelation v. United States*, 588 F. Supp. 693 (D.D.C. 1984). ..................... 1

*Fund for Study of Econ. Growth & Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15 (D.D.C. 1998), *aff'd,* 161 F.3d 755 (D.C. Cir. 1998). .............................................. 2

*Gonzales v. O Centro Espírita Beneficente União de Vegetal,* 546 U.S. 418 (2006). 19, 20, 21, 22

*Hernandez v. Comm'r*, 490 U.S. 680 (1989). ............................................................ 22

*Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90 (2d. Cir. 2007). ........................................ 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). .................................................. 16

*Marino v. Nat'l Oceanic & Atmospheric Admin.*, 33 F.4th 593 (D.C. Cir. 2022)....................... 18

*Mysteryboy Incorporation v. Comm'r*, 99 T.C.M. (CCH) 1057 (T.C. 2010). .............................. 8

*New Dynamics Found. v. United States,* 70 Fed. Cl. 782 (2006). ................................... 7

*O Centro Espírita Beneficente União de Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236 (D.N.M.

   2002). ................................................................................................ 5

*Spiritual Outreach Soc'y v. Comm'r of Internal Revenue*, 927 F.2d 335 (8th Cir. 1991). 12, 14, 15

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984). ............ 19

*United States v. Christie*, 825 F.3d 1048 (9th Cir. 2016). .......................................... 22

*United States v. Lee*, 455 U.S. 252 (1982).......................................................... 22

*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber, Cork, Linoleum &*

   *Plastic Workers of Am.*, 461 U.S. 757 (1983)...................................................... 10

**Statutes**

21 U.S.C. § 811................................................................................................ 6

21 U.S.C. § 812................................................................................... 2, 6, 9, 10

21 U.S.C. § 822................................................................................................ 9, 17

21 U.S.C. § 823................................................................................................ 9, 10

21 U.S.C. § 841................................................................................................ 9, 10

21 U.S.C. § 844................................................................................................ 9

21 U.S.C. § 871................................................................................................ 17, 21

26 U.S.C. § 170................................................................................................ passim

26 U.S.C. § 501................................................................................................ passim

26 U.S.C. § 509................................................................................ 6, 11, 12, 16

26 U.S.C. § 7428. ............................................................................................... 2

26 U.S.C. § 7611. .............................................................................................. 12

42 U.S.C. § 2000bb-1. ....................................................................................... 16

Iowa Code § 504.141. .......................................................................................... 2

**Other Authorities**

Centro Espírita Beneficente União do Vegetal, *The Beneficial Effects of Hoasca Tea in the Brain and in People with Depression* (July 11, 2019) https://udv.org.br/en/blog-en/the-beneficial-effects-of-hoasca-tea-in-the-brain-and-in-people-with-depression/ ("Hoasca Tea (also known as ayahuasca)") (a copy of this article is also saved at https://perma.cc/352R-D4T4). ............ 23

Drug Enforcement Administration, Diversion Control Division, Drug & Chemical Evaluation Section, *N,N-Dimethyltryptamine (DMT)* (December 2019), https://perma.cc/X7DB-P3EY ... 3, 10

Drug Enforcement Administration, Diversion Control Division, *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)* (updated Nov. 20, 2020), https://perma.cc/VE74-SQMH. .................................................................................................................. 20

Rev. Rul. 71-447, 1971-2 C.B. 230 (1971). ...................................................... 9

**Regulations**

21 C.F.R. § 1307.03. ...................................................................................... 9, 17

26 C.F.R. § 1.501. .............................................................................. 6, 7, 9, 10

28 C.F.R. § 0.100. ........................................................................................ 17, 21

The Defendants submit the following memorandum in support of their Motion for Summary Judgment and in opposition to the Plaintiff's Motion for Summary Judgment. Because no genuine issue of material fact exists, because Iowaska Church of Healing cannot prove that it is entitled to tax-exempt status under 26 U.S.C. § 501(c)(3), because plaintiff lacks standing to assert a claim or defense with respect to the Religious Freedom Restoration Act, and, in any event, because the Defendants have not violated the Religious Freedom Restoration Act, summary judgment for the Defendants on all pending counts is appropriate.

**I.    Background**

   A. Exempt Organizations under 26 U.S.C. § 501(c)(3)

Under the Internal Revenue Code, an organization is described in Section 501(c)(3) and is therefore exempt from federal income taxes under Section 501(a), if it can establish the following: "(1) it is organized and operated exclusively for an exempt purpose; (2) its net earnings do not inure to the benefit of any private shareholder or individual; and (3) its activities do not . . . [in substantial part] . . . attempt to influence legislation." *Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 111 F. Supp. 3d 34, 39 (D.D.C. 2015) (cleaned up). An organization must meet all three elements to qualify as an organization described in Section 501(c)(3). *Id.* The burden is on the organization to prove that it is entitled to tax-exempt status. *Freedom Church of Revelation v. United States*, 588 F. Supp. 693, 696 (D.D.C. 1984) (citations omitted). Additionally, an entity that otherwise meets these criteria "will nevertheless fail to qualify for tax-exempt status if its exemption-related activities violate public policy." *Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58, 62 n. 2 (D.D.C. 2003); *see also Bob Jones Univ. v. United States*, 461 U.S. 574, 582 (1983) ("To be eligible for an exemption under that section, an institution . . . must not be contrary to public policy.").

1

Under 26 U.S.C. § 7428(a), the United States Tax Court, the United States Court of Federal Claims, and the United States District Court for the District of Columbia are conferred concurrent jurisdiction to review the final determination of the Secretary of Treasury over an entity's tax-exempt status under Section 501(c)(3). *Educ. Assistance Found.*, 111 F. Supp. 3d at 38; *see also Fund for Study of Econ. Growth & Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15, 18 (D.D.C. 1998), *aff'd,* 161 F.3d 755 (D.C. Cir. 1998). The Court's review is *de novo* and limited to the administrative record. *Fam. Tr. of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting *Arlie Found.*, 283 F. Supp. 2d at 61–62). The entity requesting tax-exempt status carries the burden to show it has met the statutory requirements for status under Section 501(c)(3). *Id.* So Iowaska must show not only that it is entitled to tax-exempt status, but also that the Service's determination was incorrect. *Id.*

B.  Factual Background

Iowaska Church of Healing (Iowaska) was incorporated as an Iowa nonprofit corporation on September 24, 2018, and Iowaska was organized as a religious corporation under Iowa Code § 504.141(38). Dkt. No. 16, ¶ 1; Dkt. No. 20-1, ¶ 2; J.A. Ex. 4 at 19. Iowaska has also been registered to do business in the state of Florida since March 19, 2019. Dkt. No. 16, ¶ 1. Iowaska's self-stated mission "is to help individuals attain healing of the mind, body, and spirit through the sacred Sacrament of Ayahuasca." Dkt. No. 16, ¶ 17. This "Sacrament of Ayahuasca" is a tea brewed from South American plants containing dimethyltryptamine (DMT). Dkt. No. 16, ¶ 15; Drug Enforcement Administration, Diversion Control Division, Drug & Chemical Evaluation Section, *N,N-Dimethyltryptamine (DMT)* (December 2019), https://perma.cc/X7DB-P3EY. As Iowaska has admitted, DMT is a Schedule I drug under the Controlled Substances Act (CSA). Dkt. No. 16, ¶ 14; *see also* 21 U.S.C. § 812, Schedule I(c)(6). During Iowaska's ceremonies, the Sacrament of Ayahuasca is consumed in the form of a tea brewed using water and two plants

2

indigenous to the Amazon Rainforest. Dkt. No. 20-1, ¶ 14; J.A. Ex. 5 at 11. Iowaska has admitted

that it has not received an exemption from the Attorney General or the Drug Enforcement

Administration to use DMT and has not alleged that it sought an exemption from the CSA from

the courts. Dkt. No. 16, ¶ 19.

According to Iowaska's Articles of Incorporation, Iowaska was organized for the following

purposes (among others):

> a. To offer the public access to spiritual growth, development and healing through the sacred Sacrament of Ayahuasca provided under the guidelines of North and South American Indigenous traditions and cultural values;
> b. To provide necessary information to all participants of sacred healing ceremonies involving the consumption of the Sacrament of Ayahuasca. Appropriate education prior to the consumption of the Sacrament of Ayahuasca will be provided. Appropriate guidance and support will be governed during the aforementioned ceremonies. Relevant mental, emotional, spiritual integration will be offered to each participant post ceremony. Mental, emotional, and spiritual support will be offered on an ongoing basis to individuals seeking further integration as they return to their daily routines;
> c. To empower the public to connect with the unique journey of self-discovery while providing the means to grow in awareness of limiting beliefs, allowing for the deconstruction of unhealthy patterns and the realization of positive solutions;
> d. To inspire participants to discover their inherent nature and achieve harmony with Self, Others, and Mother Nature through the expansion of human consciousness . . ..

J.A. Ex. 3 at 6–7. Iowaska planned to devote 40% of its time to "Weekend Ceremonies and

Services," 10% of its time to "Spiritual meditation, prayer, and preparation for weekend

Ceremonies and Services," 20% of its time to "Email preparation, paperwork and phone

correspondence with prospective Members," 15% of its time to "Spiritual coaching and continued

integration with Members on the phone or in person," 10% of its time to "Site cleaning,

maintenance, supply shopping, travel, meal preparation," and 5% of its time to "Record keeping,

documentation, legal correspondence, planning." J.A. Ex. 7 at 2–3.

Prospective members of Iowaska must complete a membership application and pay a one-time membership fee of $60. J.A. Ex. 5 at 4. Iowaska intends to offer its members the opportunity to participate in group ceremonies to consume the Sacrament of Ayahuasca. J.A. Ex. 5 at 6. The ceremonies typically occur on Friday, Saturday, and Sunday. *Id*. In 2019, members had to pay $333 per ceremony. J.A. Ex. 7 at 5. If a member participated in all three ceremonies held over a weekend, the total cost would be $1,000. *Id*. If a member also chose to participate in a private ceremony over the weekend, there would be an additional $800 cost. *Id*. at 7.  Iowaska admits that it is not "affordable" for a member to attend its ceremonies regularly. J.A. Ex. 9 at 5.

Iowaska has twenty members from six states (California, New Hampshire, Florida, Iowa, Virginia, and Georgia) and two foreign countries (Sweden and Colombia).  Dkt. No. 20-1, ¶ 26; J.A. Ex. 9 at 4–5. It held a total of five ceremonies over three weekends in May, June, and July 2019. J.A. Ex. 14 at 2. Each ceremony was attended by three to four members. J.A. Ex. 7 at 8–9. Of the twenty members of Iowaska, only four attended ceremonies on multiple weekends. Dkt. No. 20-1, ¶ 25; J.A. Ex. 7 at 5–6. These weekend ceremonies were conducted at the same location in Florida during the months of May, June, and July 2019. Dkt. No. 20-1, ¶ 27; J.A. Ex. 7 at 6, J.A. Ex. 14 at 2. "Members do not participate in person on a weekly or other scheduled basis" because "regular in-person attendance is simply not practical or affordable" since "members live in different states and several in foreign countries." J.A. Ex. 9 at 5. Iowaska conceded during the Internal Revenue Service's review of its application that "satisfaction of the 'associational test' for church status . . . is problematic for the Organization because of the irregular attendance by members at its religious ceremonies." J.A. Ex. 14 at 5.[1]

---

[1] By contrast, Iowaska's cited *Gonzalez v. O Centro Espírita Beneficente União de Vegetal* involved a recognized 130 member Santa Fe, New Mexico, congregation that for several years

(continued...)

On January 10, 2019, Iowaska submitted an application to the Internal Revenue Service (the Service) seeking tax-exempt status under 26 U.S.C. § 501(c)(3). Dkt. No. 16, ¶ 6. Soon after, on February 28, 2019, the Church filed a request for a religious exemption from the CSA with the United States Drug Enforcement Administration's (DEA) Diversion Control Division in Springfield, Virginia, which has not yet been granted or denied. Dkt. No. 20-1, ¶ 36; J.A. Ex. 7 at 9. Iowaska suspended ceremonies in mid-2019 when its members were concerned with the delays related to its governmental applications and were fearful of possible law enforcement intrusion into their sacred ceremonies and potential criminal prosecution. Dkt. No. 20-1, ¶ 30; J.A. Ex. 11 at 5.

The Service issued a proposed adverse determination letter on June 16, 2020, proposing to deny Iowaska's application for recognition as a 26 U.S.C. § 501(c)(3) charitable organization and to be classified as a church under 26 U.S.C. § 170(b)(1)(A)(i). Dkt. No. 20-1, ¶ 43; J.A. Ex. 12 at 8–11. In its proposed adverse determination letter denying tax-exempt status to Iowaska under 26 U.S.C. § 501(c)(3), the Service stated that Iowaska's "primary purpose of conducting activities utilizing [Ayahuasca] violates federal law," specifically because Iowaska had not "sought relief in the courts" or "received the exemption to the CSA" from the DEA or. Dkt. No. 20-1, ¶ 44; J.A. Ex. 12 at 11. On June 28, 2021, the Independent Office of Appeals in the Service issued a final adverse determination that Iowaska did not qualify for exemption from federal income tax. Dkt. No. 16, ¶ 7; J.A. Ex. 18 at 1. The Service explained this adverse determination was made because Iowaska was not organized and operated exclusively for exempt purposes and because Iowaska's activities were illegal under federal law and violated public policy. J.A. Ex. 18 at 1; 26 C.F.R.

---

had conducted "regular religious services, held on the first and third Saturdays of every month and on ten annual holidays." *O Centro Espírita Beneficente União de Vegetal v. Ashcroft,* 282 F. Supp. 2d 1236, 1240, 1255 (D.N.M. 2002).

§ 1.501(c)(3)-1. But this adverse explanation by the Service that Iowaska's activities were illegal did not bind the DEA any more than any other agency's explanation on the legality/illegality of particular drug use would bind the DEA. 21 U.S.C. §§ 811 and 812, Schedule I(c)(6).

Iowaska then sued, asking the Court to find that it "is entitled to recognition as an organization described in [26 U.S.C.] §§ 501(c)(3) and 170(b)(1)(A)(i)" and a determination that the Defendants violated the RFRA "[b]y ruling that Plaintiff's activities are illegal in a binding adverse determination letter." Dkt. No. 16 at 9.

## II. The Court Should Deny Summary Judgment for the Plaintiff and Grant Summary Judgment for the Defendants as to Count One because Iowaska Church of Healing is not Entitled to Tax-Exempt Status.

The Service is the federal entity responsible for determining whether an applicant should be granted or denied exempt status under the federal tax laws. Thus, unlike the Count II where Iowaska lacks standing to assert an RFRA violation vis-à-vis the Service, the Service recognizes that its denial of Iowaska's application for tax exempt status under Internal Revenue Code Section 501 does provide Iowaska standing against it under Count One. But Count I still fails because Iowaska has not met the criteria under 26 U.S.C. § 501(c)(3) for tax exempt status and Iowaska failed to meet the exception to private foundation status under Section 509(a)(1) as a church defined in Section 170(b)(1)(A)(i).

### A. The Service correctly determined that Iowaska Church of Healing was not entitled to tax-exempt status under Section 501(c)(3).

On June 28, 2021, the Service issued a final adverse determination letter that Iowaska Church of Healing did not qualify for exemption from federal income taxation under Section 501(c)(3). J.A. Ex. 18 at 1. The Service explained this adverse determination was made because Iowaska was not organized and operated exclusively for exempt purposes under 26 U.S.C. § 501(c)(3) and because Iowaska's activities were illegal under federal law and violated public

policy. *Id.* The Service's determination is correct, and therefore, Iowaska is not entitled to tax-exempt status under 26 U.S.C. § 501(c)(3).

Exemptions from income tax are matters of legislative grace which the courts have consistently construed strictly. *New Dynamics Found. v. United States,* 70 Fed. Cl. 782, 799 (2006). To be exempt as an organization described in Section 501(c)(3), an organization must be both organized and operated exclusively for one or more exempt purpose. If an organization fails to meet either the organizational test or the operational test, it is not exempt. 26 C.F.R. § 1.501 (c)(3)-1(a)(1). While an incidental non-exempt purpose or activity would not disqualify Iowaska from tax-exempt status, a substantial non-exempt purpose or activity does bar it from exemption, regardless of the number or quality of exempt purposes. *Better Bus. Bureau of Washington, D.C. v. United States,* 326 U.S. 279, 283 (1945).

An organization is organized exclusively for one or more exempt purposes only if its articles of organization limit its purposes to one or more exempt purposes *and* do not expressly empower it to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes. 26 C.F.R. § 1.501 (c)(3)–1(b). Similarly, an organization is operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of the exempt purposes specified in 26 U.S.C. § 501(c)(3). *Better Bus. Bureau of Washington, D.C.,* 326 U.S. at 283; *see also Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 111 F. Supp. 3d 34, 39 (D.D.C. 2015) (quoting *Church of Visible Intelligence that Governs the Universe v. United States*, 4 Cl. Ct. 55, 61 (Cl. Ct. 1983)). Because the statute is written in the conjunctive ("organized *and* operated"), Iowaska must meet both criteria. 26 C.F.R. § 1.501 (c)(3)–1(a); *Educ. Assistance Found.*, 111 F. Supp. 3d at 41.

7

An organization will fail to qualify for tax-exempt status if its activities violate public policy. "[E]ntitlement to tax exemption depends on meeting certain common law standards of charity—namely, that an institution seeking tax-exempt status must serve a public purpose and not be contrary to established public policy." *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983); *see also Mysteryboy Incorporation v. Comm'r*, 99 T.C.M. (CCH) 1057 (T.C. 2010) (Organization was not organized exclusively for an exempt purpose when "petitioner proposes to operate in a manner that promotes activities which are prohibited by Federal and State laws, violate public policy as reflected in those laws, and tend to promote illegal activities."); Rev. Rul. 71-447, 1971-2 C.B. 230 (1971) ("All charitable trusts, educational or otherwise, are subject to the requirement that the purpose of the trust may not be illegal or contrary to public policy.").

According to Iowaska's Articles of Incorporation, Iowaska was organized for the following purposes (among others):

a) To offer the public access to spiritual growth, development and healing through the sacred Sacrament of Ayahuasca provided under the guidelines of North and South American Indigenous traditions and cultural values;

b) To provide necessary information to all participants of sacred healing ceremonies involving the consumption of the Sacrament of Ayahuasca. Appropriate education prior to the consumption of the Sacrament of Ayahuasca will be provided. Appropriate guidance and support will be governed during the aforementioned ceremonies. Relevant mental, emotional, spiritual integration will be offered to each participant post ceremony. Mental, emotional, and spiritual support will be offered on an ongoing basis to individuals seeking further integration as they return to their daily routines;

c) To empower the public to connect with the unique journey of self-discovery while providing the means to grow in awareness of limiting beliefs, allowing for the deconstruction of unhealthy patterns and the realization of positive solutions;

d) To inspire participants to discover their inherent nature and achieve harmony with Self, Others, and Mother Nature through the expansion of human consciousness . . ..

J.A. Ex. 3 at 6–7. Clearly, a substantial purpose of Iowaska is the distribution of the Sacrament of Ayahuasca, which contains dimethyltryptamine (DMT), for use by its participants during its

ceremonies. Iowaska's self-stated mission "is to help individuals attain healing of the mind, body, and spirit through the sacred Sacrament of Ayahuasca." Dkt. No. 16, ¶ 17.

This "Sacrament of Ayahuasca" is a tea brewed from South American plants containing dimethyltryptamine (DMT). *Id.*, ¶ 15; Drug Enforcement Administration, Diversion Control Division, Drug & Chemical Evaluation Section, *N,N-Dimethyltryptamine (DMT)* (December 2019), https://perma.cc/X7DB-P3EY. As Iowaska has admitted, DMT is a Schedule I drug under the CSA. Dkt. No. 16, ¶ 14; *see also* 21 U.S.C. § 812, Schedule I (c)(6). For Schedule I substances, including DMT, it is generally illegal to manufacture, distribute, dispense, or possess with the intent to manufacture, distribute, or dispense these substances outside the context of federally approved scientific studies. 21 U.S.C. §§ 841, 844, 823. Under DEA regulations, a person may submit a written request for an exception to the application of the CSA and the DEA may grant an exception. 21 U.S.C. § 822(d); 21 C.F.R. § 1307.03. Iowaska submitted a written request to the DEA on February 28, 2019. J.A. Ex. 9 at 1. Iowaska has admitted it has not received an exemption from the Attorney General or from the DEA to use DMT. Dkt. No. 16, ¶ 19. Thus, Iowaska's Articles of Incorporation do not limit is purposes to one or more exempt purposes and expressly empower the organization to engage, other than as an insubstantial part of its activities, in the distribution of Ayahuasca, which is illegal, against public policy, and not in furtherance of one or more exempt purposes. 26 C.F.R. § 1.501 (c)(3)–1(b).

Iowaska argues that its "other purposes and activities," which "include the education of the public, the relief of the poor and stressed, and the promotion of social welfare" are exempt under Section 501(c)(3). Dkt. No. 20-3 at 24–26. Even if Iowaska had other exempt purposes and activities, the presence of a single, nonexempt purpose, in this case, the distribution of Ayahuasca, is substantial and has destroyed its exemption. *Fam. Tr. of Mass., Inc. v. United States*, 892 F.

Supp. 2d 149, 158–59 (D.D.C. 2012) (citing, among others, *Better Bus. Bureau of Washington, D.C., Inc. v. United States*, 326 U.S. 279, 283 (1945)).

Nor did Iowaska satisfy the operational test of 26 C.F.R. § 1.501 (c)(3)–1(c)(1). Iowaska's primary activity was conducting ceremonies during which the Sacrament of Ayahuasca was sold and distributed to its participants for their use. J.A. Ex. 7 at 2–3. Half of all time spent was devoted to either the preparation for or conducting of weekend ceremonies and services. *Id.* Yet again, possession and distribution of DMT is illegal, and therefore furthers a nonexempt purpose. 21 U.S.C. §§ 812, Schedule I(c)(6), 841, 823. Even if Iowaska engages in other recognized charitable activities (Dkt. No. 20-3 at 24–26), the presence of this single activity to further a nonexempt purpose, which dominates most of Iowaska's activities, is substantial and has destroyed its exemption. *Fam. Tr. of Mass., Inc*, 892 F. Supp. 2d at 158–59 (citations omitted).

Furthermore, Iowaska's activities violate public policy. Public policy "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (internal citations and quotations omitted). While illegality and public policy are distinct concepts, the two are intimately related. *See Bob Jones Univ. v. United States*, 461 U.S. 574 (1983) (holding that, while private schools were not prohibited by law from racial discrimination, such discrimination violated public policy in part because it was illegal in public institutions). In particular, because Congress has extensively legislated in the area of controlled substances, the use of illegal drugs, including DMT, violate public policy. *W.R. Grace & Co.*, 461 U.S. at 766; *see also* 21 U.S.C. §§ 812, Schedule I(c)(6), 841, 823.

10

Iowaska therefore has not met its burden, and tax-exempt status should be denied under 26 U.S.C. § 501(c)(3). The Service did not err when reasoning that Iowaska's use of the Sacrament of Ayahuasca was illegal under federal law and in violation of public policy. J.A. Ex. 18 at 1. Iowaska has made no showing to the contrary. Dkt. No. 20-3 at 24–26. And because these activities violate public policy, even if Iowaska could meet all other criteria under 26 U.S.C. § 501(c)(3), Iowaska "will nevertheless fail to qualify for tax-exempt status if its exemption-related activities violate public policy." *Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58, 62 n. 2 (D.D.C. 2003).

B. <u>In the alternative, even if Iowaska is an exempt organization under Section 501(c)(3), the Service correctly determined that Iowaska Church of Healing does not qualify as a church as defined in Section 170(b)(1)(A)(i).</u>

Even if Iowaska qualified as an exempt organization under Section 501(c)(3),[2] which it does not for the reasons articulated above, it would be presumed to be a private foundation because it fails to meet the exception to private foundation status under Section 509(a)(1) as a church defined in Section 170(b)(1)(A)(i). Section 509(a) of the Code provides that organizations exempt under Section 501(c)(3) are private foundations unless the organization fits within certain classes of public charities described in Section 509(a)(1)–(4) and thereby qualifies for non-private foundation status. Organizations that are described in Section 501(c)(3) and which are described in section 509(a)(1)–(4) are known as public charities. At issue is the provision within Section 509(a)(1) affording exemption from private foundation status to organizations described in Section

---

[2] If the Court finds that Iowaska is not an exempt organization under Section 501(c)(3), the Court need not decide whether Iowaska is classified as a private foundation or a public charity because an exemption under Section 501(c)(3) is a necessary predicate for this classification. 26 U.S.C. § 509.

170(b)(1)(A)(i)–(vi). In particular, Iowaska seeks a declaration that it qualifies under Section

170(b)(1)(A)(i), which covers "a church or a convention or association of churches."[3]

Neither the statute nor the Treasury regulations define the term church under Section

170(b)(1)(A)(i). In determining whether an organization qualifies as a church, courts have

considered fourteen factors developed by the Service as helpful: (1) a distinct legal existence; (2) a

recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a

formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not

associated with any church or denomination; (7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies; (9) a literature of its own;

(10) established places of worship; (11) regular congregations; (12) regular religious services; (13)

Sunday schools for the religious instruction of the young; and (14) schools for preparing its

ministers. *See, e.g.*, *Found. of Hum. Understanding v. United States*, 88 Fed. Cl. 203, 220 (2009),

*aff'd*, 614 F.3d 1383 (Fed. Cir. 2010) ("[T]he court views these criteria neither as exclusive nor as

mechanically applied, but, rather, to serve as a list of some of the characteristics that may be used

in determining whether an organization is a church."); *Spiritual Outreach Soc'y v. Comm'r of

Internal Revenue*, 927 F.2d 335, 339 (8th Cir. 1991) ("[W]e view the fourteen criteria as a guide,

helpful in deciding what constitutes a church.").[4]

---

[3] There are some benefits available to an organization that meets the exception to private
foundation status under Section 509(a)(1) as a church defined in Section 170(b)(1)(A)(i) that are
unavailable to other tax-exempt organizations. For instance, Section 6033 exempts churches
from the requirement to file information returns and Section 7611 contains restrictions on the
ability of the Service to start an inquiry into whether a church qualifies for tax-exempt status.

[4] Several courts have applied an "associational test, which defines a church as an organization
that includes a body of believers who assemble regularly for communal worship." *Found. of
Hum. Understanding v. United States*, 614 F.3d 1383, 1387 (Fed. Cir. 2010). "[T]he
associational test and the '14 criteria test' substantially overlap; as courts have pointed out,

(continued...)

This Court has recognized that "the existence of an established congregation served by an organized ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance." *Am. Guidance Found., Inc. v. United States*, 490 F. Supp. 304, 306 (D.D.C. 1980). "At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role." *Id.* (holding that plaintiff was not a church because it "has made no real effort to convert others or to extend its membership beyond the immediate Seyfried family"); *see also Found. of Hum. Understanding v. United States*, 614 F.3d 1383, 1389 (Fed. Cir. 2010) ("[C]ourts have held that in order to be considered a church under section 170, a religious organization must create, as part of its religious activities, the opportunity for members to develop a fellowship by worshipping together."); *Church of Eternal Life & Liberty, Inc. v. Comm'r of Internal Revenue*, 86 T.C. 916, 924 (1986) ("A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith.").

In *Foundation of Human Understanding*, the Federal Circuit held that Foundation of Human Understanding failed to establish that it qualified as a church because it "has not established that it held regular services with a regular congregation." 614 F.3d at 1391. During the three years at issue, Foundation of Human Understanding "held 21 seminars in various locations

---

among the most important of the 14 criteria are the requirements of 'regular congregations' and 'regular religious services.'" *Id*. at 1389.

throughout the United States," including five at one location, but "did not hold regular services" or "have a regular congregation." *Id*. at 1390. The Federal Circuit held that the Foundation of Human Understanding "failed to show that the sporadic meetings conducted in various locations" were sufficient to "provide the opportunity for members to form a religious fellowship through communal worship" and failed to establish that "a regular congregation gathered." *Id*.

Similarly, in *Spiritual Outreach Society*, the Eighth Circuit affirmed the decision of the Tax Court that Spiritual Outreach Society "neither fulfilled an associational role required of churches nor satisfied the listed requirements used by the IRS to determine church status." *Spiritual Outreach Soc'y v. Comm'r of Internal Revenue*, 927 F.2d 335, 336 (8th Cir. 1991). Spiritual Outreach Society built an amphitheater on land it owned, and its main activity was holding bi-monthly programs at the amphitheater during the months that weather would permit outdoor gatherings. *Id*. at 337. "These programs were held on Saturdays in part to avoid conflict with the participant's church attendance on Sunday" and, "[w]hile the programs opened and closed with a minister leading a prayer, the bulk of each event consisted of the presentation of gospel music and congregational singing." *Id.* The Court held that Spiritual Outreach Society failed to establish that it was a church because, among other things, it "failed to show that it enjoys an established congregation" and "nothing indicates that the participants [who attended Spiritual Outreach Society's musical events] considered [it] their church." *Id*. at 339.

Iowaska asserts that it has a "regular congregation and religious services" because it had a membership of 20 when it conducted its weekend ceremonies in 2019. Dkt. 20-3 at 30. Yet the number of ceremonies held by Iowaska was far less than those found to be insufficient to establish regular religious services by the Federal Circuit in *Foundation of Human Understanding* or by the

Eighth Circuit in *Spiritual Outreach Society.* Similarly, the administrative record fails to establish that Iowaska has an established congregation.

Iowaska has twenty members from six states (California, New Hampshire, Florida, Iowa, Virginia, and Georgia) and two foreign countries (Sweden and Colombia). J.A. Ex. 9 at 4–5. It has held a total of five ceremonies over three weekends in May, June, and July 2019.[5] J.A. Ex. 14 at 2. Each ceremony was attended by three to four members, and only four members have attended multiple retreats.[6] J.A. Ex. 7 at 7–8. The administrative record conclusively shows that Iowaska does not have an established, continuing, cohesive congregation. *Id.*

Iowaska admits that "[m]embers do not participate in person on a weekly or other scheduled basis" because "regular in-person attendance is simply not practical or affordable" since "members live in different states and several in foreign countries." J.A. Ex. 9 at 5. Although Iowaska asserts that members "remain in frequent contact with the organization's Healers through telephone and email support," J.A. Ex. 9 at 5, there is no evidence in the record about how often members are in contact with the Healers or whether members are in contact with each other regularly. Iowaska also conceded during the Internal Revenue Service's review of its application that "satisfaction of the 'associational test' for church status . . . is problematic for the Organization because of the irregular attendance by members at its religious ceremonies." J.A. Ex. 14 at 5.

Iowaska Church of Healing does not qualify as a church under Section 170(b)(1)(A)(i) because it has failed to establish that it has an established congregation or that it holds regular

---

[5] The Complaint references a final ceremony held on August 18, 2019. Dkt. No. 16, ¶¶ 23, 25. There is no information about such a ceremony in the administrative record.

[6] Iowaska's application identifies seventeen participants in ceremonies, four of whom attended multiple retreats. J.A. Ex. 7 at 8–9. It therefore appears that seven members have not attended a ceremony.

religious services. As a result, even if this Court finds that Iowaska is exempt under Section 501(c)(3), the Court should find that Iowaska is a private foundation under Section 509 because Iowaska has not shown that it qualifies as a church or any other exception to private foundation status in Section 509.

III. **The Court Should Deny Summary Judgment for the Plaintiff and Grant Summary Judgment for the Defendants as to Count Two.**

The Religious Freedom Restoration Act (RFRA) provides that the "Government shall not substantially burden a person's exercise of religion" unless the government "demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a) & (b). "A person whose religious exercise has been burdened . . . may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," subject to the requirements of Article III standing. *Id.* § 2000bb-1(c).

A.  Iowaska lacks standing to assert a RFRA claim.

Standing to raise RFRA as a claim or defense in federal court is "governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000bb-1(c). To establish standing, a plaintiff must prove: (1) it has suffered an "injury in fact"; (2) that injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Amended Complaint alleges that Iowaska has been injured because the Service "rul[ed] that Plaintiff's activities are illegal in a binding adverse determination letter." Dkt. No. 16, ¶ 37. The Amended Complaint, however, does not specifically allege that the Service's letter would be binding on *DEA* (which apparently is still considering Iowaska's request for a religious

exemption to the CSA), nor does Iowaska's Motion for Summary Judgment explain how that could be so, or cite any authority for that odd proposition. Iowaska's Motion also contends that the Service should have made an independent determination of illegality, Dkt. No. 20-3 at 20–21, but none of Iowaska's claims or arguments satisfy Article III.

Assuming, arguendo, that Iowaska has identified an Article III "injury in fact," it has identified no injury that is "fairly traceable" to the actions of the Service. The Service does not have statutory authority to enforce the CSA or conduct an investigation on whether a substance should be classified as a Schedule I substance. *Id.* Congress delegated this power to the Attorney General, who then delegated the power to the DEA.[7] 21 U.S.C. § 871(a); 28 C.F.R. § 0.100. And because the Service lacks statutory authority to grant exemptions from the CSA, Plaintiffs' asserted RFRA injury is not fairly traceable to the Service.

As explained, the Service does have statutory authority to deny a requested tax exemption because DMT violates the CSA. *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1197 (10th Cir. 2018) (recognizing that the Service may when necessary to enforce tax statutes determine "as a matter of civil tax law" that conduct violates the CSA). But that authority does not extend to determining in the first instance whether DMT in fact violates the CSA, or whether any religious party is entitled to a RFRA exemption from the CSA. As explained, the DEA, and not

---

[7] The CSA authorizes the Attorney General to create exemptions from the prohibitions on handling controlled substances. *See* 21 U.S.C. § 822(d). By that authority, 21 C.F.R. § 1307.03, provides that "[a]ny person may apply for an exception to the application of any provision of [the DEA regulations]," by filing a written request with the DEA Administrator, who has authority to grant such an exception. The DEA has established a petition process for seeking RFRA exemptions, which is open to anyone who wishes to manufacture, distribute, import, export, use, or possess ayahuasca or any other controlled substance for religious purposes. *See* Drug Enforcement Administration, Diversion Control Division*, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)* (updated Nov. 20, 2020), https://perma.cc/VE74-SQMH.

the Service, has that responsibility, and nothing in RFRA authorizes the Service to make an independent evaluation of that matter.

Plaintiff also fails to demonstrate that the injury they identify would be redressed by a favorable decision. Iowaska admits that it suspended its ceremonies because the members "were fearful of possible law enforcement intrusion into their sacred ceremonies and potential criminal prosecution under the CSA before receiving the respective approvals." Dkt. No. 20-3. Even if Iowaska were to prevail on all counts here, the grant of tax-exempt status under Section 501(c)(3) and a determination that does not address the legality of Ayahuasca would not grant Iowaska the protection from prosecution that would allow it to continue its ceremonies. The Service simply lacks the power to interpret or enforce the CSA. Iowaska, therefore, lacks standing because a favorable decision would not redress the alleged injuries. *See, e.g.*, *Marino v. Nat'l Oceanic & Atmospheric Admin.*, 33 F.4th 593 (D.C. Cir. 2022).

Iowaska's contention that the Service's determination had a "chilling" effect on its free exercise of religion also fails to identify a causal connection between the Service's granting, or not granting, its application for a federal tax exemption and its members' free exercise of their religious beliefs. Dkt. No. 16; Dkt. No. 20. Iowaska commenced and held its religious ceremonies in 2019 with no ruling by the Service upon its application for exempt status. *See* Dkt. No. 16, ¶¶ 23, 25, and 27; Dkt. No. 20-1, ¶ 27; J.A. Ex. 7 at 6, J.A. Ex. 14 at 2. Plaintiff likewise ceased its religious ceremonies in 2019 with no ruling by the Service upon its application for tax exempt status. *Id.*[8] The Service's granting, or not granting, Plaintiff's application for tax exempt status—given

---

[8] The Service's communications with Iowaska in 2019 were entirely innocuous and cannot support any assertion of "chilling" conduct by the Service, as a matter of law. J.A. Ex. 6 at 4 (Service question to Iowaska: "What is the status of your religious exemption with the DEA?"); J.A. Ex. 7 at 9 & 54–55 (Iowaska's answer and attaching Iowaska email correspondence with DEA); J.A. Ex. 8 & 9.

Plaintiff's pleaded facts here—is simply not causally related to Plaintiff's claimed harm. The Service's final determination letter issued in 2021, therefore, cannot have caused a "chilling effect," as Iowaska had already suspended activities two years before. *See, e.g.*, *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378–79 (D.C. Cir. 1984) (plaintiffs must suffer some concrete harm apart from the "chill" itself). Furthermore, any alleged "chilling effect" would not be satisfactorily eliminated by success in this suit. The Service could grant Iowaska's application for tax exemption, and if the DEA denies its application for a CSA exemption, the DEA could still pursue Plaintiff criminally.

And as explained more fully below, the alleged facts here are far removed from those in *Gonzales v. O Centro Espírita Beneficente União de Vegetal,* 546 U.S. 418 (2006). In *União do Vegetal,* the Government conceded that it had "sought to prohibit" that established church congregation "from engaging in the practice" of sacramental use of Ayahuasca. *Id.* at 423. In particular, the Government had seized a shipment of the church's Ayahuasca and had "threatened the UDV with prosecution." *Id.* at 425. Here, by contrast, the Service only denied Iowaska's application for federal tax-exempt status. The Service did not threaten to prosecute Iowaska for violating federal drug laws; nor did it have the authority to do so.

B. Defendants have not violated the RFRA, as Iowaska Misrepresents the Holding in *Gonzalez v. O Centro Espírita Beneficente União do Vegetal.*

Even if it could establish Article III standing, Iowaska fails to establish any violation of the RFRA. Iowaska does not claim that the denial of tax-exempt status violated the RFRA. Dkt. No. 16 ¶ 37. Rather, Iowaska's Complaint alleges only that the Defendants violated the RFRA by

"ruling that Plaintiff's activities are illegal." *Id.*[9] Yet, Iowaska has already admitted that its activities were illegal: its Amended Complaint acknowledges that DMT is a Controlled Substance and that it has not received an exemption from the Attorney General to use DMT in its ceremonies. *Id.*, ¶¶ 14, 19. Iowaska has therefore failed to establish that the Defendants' actions violated the RFRA.

Iowaska relies almost exclusively on the United States Supreme Court opinion in *Gonzalez v. O Centro Espírita Beneficente União de Vegetal* for the proposition that the use of Ayahuasca is legal. *See, e.g.*, Dkt. No. 20-3 at 18. But Iowaska's reliance is misplaced. The Supreme Court never determined that the use of Ayahuasca was legal. O Centro Espírita Beneficente União de Vegetal (UDV) is a church based in Brazil, with an American branch, which uses Ayahuasca[10] as part of its religious practices. *União de Vegetal*, 546 U.S. 418, 425 (2006). In 1999, the United States seized shipments of Ayahuasca bound for UDV. *Id.* UDV sued the Attorney General seeking declaratory and injunctive relief that applying the CSA to the UDV's use of Ayahuasca violated RFRA. *Id.* at 425–26.

But ultimately, the Supreme Court did not rule on whether there was a violation of RFRA. At issue was whether the Government, at the *preliminary injunction* stage, had failed to establish a compelling interest in barring the UDV's use of Ayahuasca. *Id.* at 439. The Government had

---

[9] Iowaska's Motion for Summary Judgment does, however, assert that the Service should have made an independent determination of illegality. Dkt. No. 20-3 at 20–21. This assertion was not only omitted from the Complaint, *see generally* Dkt. No. 16, it is incorrect, *see supra* Section III.A.

[10] The Supreme Court uses the spelling "hoasca" in its opinion. *União de Vegetal*, 546 U.S. at 425. "Hoasca" and "Ayahuasca" refer to the same substance. *See, e.g.*, Centro Espírita Beneficente União do Vegetal, *The Beneficial Effects of Hoasca Tea in the Brain and in People with Depression* (July 11, 2019) https://udv.org.br/en/blog-en/the-beneficial-effects-of-hoasca-tea-in-the-brain-and-in-people-with-depression/ ("Hoasca Tea (also known as ayahuasca)") (a copy of this article is also saved at https://perma.cc/352R-D4T4).

conceded that the application of the CSA to UDV would (1) substantially burden (2) a sincere (3) religious exercise, thereby establishing the UDV's *prima facie* case under RFRA. *Id.* at 428. To rebut the UDV's *prima facie* case, the Government argued that applying the CSA was the least restrictive means of advancing a compelling government interest "in the *uniform* application of the CSA, such that no exception to the ban on use of the hallucinogen can be made to accommodate the sect's sincere religious practice." *Id.* at 423 (emphasis in original). The Supreme Court determined that this was not a sufficient interest, and the Government had not met its burden under RFRA. *Id.*

This is very different than how Iowaska represents the holding. The Supreme Court did not find that there was *no* compelling government interest, only that the Government had failed to prove one at that point in the litigation. *Id.* at 439. Nor did the Supreme Court determine that all use of Ayahuasca was protected by RFRA, only that here, UDV's use could not be barred. *Id.* Furthermore, *União de Vegetal* involved actual seizure of personal property and a threat of prosecution, not tax-exempt status as Iowaska seeks here. Government interests in prosecution are necessarily different than Government interests in taxing income of organizations. Thus, *União de Vegetal* simply does not support the propositions advanced by Iowaska.

Moreover, as explained, the Service lacks statutory authority to make an independent determination of whether a party is entitled to a religious exemption to the CSA. The CSA delegates that authority to the DEA, 21 U.S.C. § 871(a); 28 C.F.R. § 0.100, and nothing in RFRA purports to grant an agency authority to make RFRA exemptions from statutes it does not administer.

That Iowaska has not received from the DEA any exception to the CSA is also relevant even to the extent that Iowaska tries to argue that this determination of illegality imposed a

substantial burden because Iowaska had to pay taxes. After *União de Vegetal*, courts have upheld the federal government's denials of RFRA exceptions to the CSA. *See, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (denying exception to CSA for sacramental cannabis use because the government had a compelling interest in "mitigating the risk that cannabis from the Ministry will be diverted to recreational users"). Given that Iowaska has not received an exemption from the criminal law and that its application for such an exception very well may be denied, it made sense for the Service to analyze Iowaska's application for tax exempt status based on the current state of affairs—in which Iowaska is subject to criminal prosecution if it continues to distribute DMT. The determination of Iowaska's request for an exception to the criminal law could be relevant to the Service's determination of its tax-exempt status. But it remains true that it is the DEA and not the Service that can grant Iowaska an exception to the CSA. RFRA should *not* be understood to compel the Service to pre-judge that exception request even as a predicate to its tax-exempt-status determination.

Furthermore, in cases decided before Congress passed RFRA, courts found that participation in the federal tax system is the least restrictive means of furthering the Government's interest. *See Hernandez v. Comm'r*, 490 U.S. 680, 698–700 (1989) (rejecting free exercise challenge to payment of income taxes that allegedly made religious activities more difficult); *United States v. Lee*, 455 U.S. 252, 260 (1982) (rejecting an Amish taxpayer's claim that free exercise clause permitted his exemption from social security tax obligations: "[t]he tax system could not function if denominations were allowed to challenge the tax system" because it operated "in a manner that violates their religious belief").

Cases decided after the enactment of RFRA have reached the same conclusion. *See Branch Ministries v. Rossotti*, 211 F.3d 139, 143–44 (D.C. Cir. 2000) (revocation of Church's tax-exempt

status for engaging in partisan political activity did not violate RFRA); *see also Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90, 92–93 (2d. Cir. 2007) (requirement that individual with religious objections to military activities or spending pay federal taxes did not violate the free exercise clause or RFRA); *Adams v. Comm'r of Internal Revenue*, 170 F.3d 173, 179 (3d Cir. 1999) (rejecting argument that RFRA and the free exercise clause required the Service to accommodate the plaintiff's religious beliefs so that her tax payments did not fund the military because the "least restrictive means of furthering a compelling interest in the collection of taxes . . . is in fact, to implement that system in a uniform, mandatory way, with Congress determining in the first instance if exemptions are to [be] built into the legislative scheme").

**IV.**     **Conclusion**

For the reasons explained above, Iowaska Church of Healing is not entitled to tax-exempt status under 26 U.S.C. § 501(c)(3) and Iowaska does not meet the requirements for church status under 26 U.S.C. § 170(b)(1)(A)(i), therefore, the Service made the correct determination. Nor have the Defendants violated RFRA by ruling that Iowaska's activities are illegal. The Court should therefore deny Plaintiff's motion for summary judgment and grant summary judgment for the Defendants.

*(Signature block on the following page.)*

Dated: July 1, 2022                          DAVID A. HUBBERT
                                             Deputy Assistant Attorney General

                                             */s/ Emily K. Miller*
                                             EMILY K. MILLER (KY #97725)
                                             KRISTINA M. PORTNER (DC #1002793)
                                             JOSEPH E. HUNSADER  (DC #453328)
                                             Trial Attorneys, Tax Division
                                             U.S. Department of Justice
                                             P.O. Box 227
                                             Washington, D.C.  20044
                                             202-353-7509 (v)
                                             202-514-6866 (f)
                                             Emily.K.Miller@usdoj.gov
                                             Kristina.M.Portner@usdoj.gov
                                             Joseph.E.Hunsader@usdoj.gov
                                             *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those parties registered to receive it.

*/s/ Emily K. Miller*
EMILY K. MILLER
Trial Attorney
United States Department of Justice, Tax Division
