IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IOWASKA CHURCH OF HEALING,<br>4114 – 27th Street<br>Des Moines, IA 50310<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, and<br>CHARLES P. RETTIG, *in his official capacity*<br>*as* Commissioner of Internal Revenue,<br>1111 Constitution Avenue NW<br>Washington, DC 20224<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 1:21-cv-02475 |

**REPLY IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.   THE COURT SHOULD DENY SUMMARY JUDGMENT FOR THE PLAINTIFF AND GRANT SUMMARY JUDGMENT FOR THE DEFENDANTS AS TO COUNT ONE BECAUSE IOWASKA CHURCH OF HEALING IS NOT ENTITLED TO TAX-EXEMPT STATUS. .................................................................................................................... 1

   A.   THE SERVICE'S DETERMINATIONS AS TO OTHER ORGANIZATIONS' ENTITLEMENT TO TAX-EXEMPT STATUS UNDER SECTION 501(C)(3) ARE IRRELEVANT. .................................... 2

   B.   THE SERVICE CORRECTLY DETERMINED THAT IOWASKA CHURCH OF HEALING WAS NOT ENTITLED TO TAX-EXEMPT STATUS UNDER SECTION 501(C)(3). ..................................... 3

   C.   IN THE ALTERNATIVE, EVEN IF IOWASKA IS AN EXEMPT ORGANIZATION UNDER SECTION 501(C)(3), THE SERVICE CORRECTLY DETERMINED THAT IOWASKA CHURCH OF HEALING DOES NOT QUALIFY AS A CHURCH AS DEFINED IN SECTION 170(B)(1)(A)(I). ......................... 5

II.  THE COURT SHOULD DENY SUMMARY JUDGMENT FOR THE PLAINTIFF AND GRANT SUMMARY JUDGMENT FOR THE DEFENDANTS AS TO COUNT TWO. ................................................................................................................................ 6

   A.   IOWASKA LACKS STANDING TO ASSERT A RFRA CLAIM. ...................................... 7

   B.   DEFENDANTS HAVE NOT VIOLATED THE RFRA, AS IOWASKA MISREPRESENTS THE HOLDING IN *GONZALEZ V. O CENTRO ESPÍRITA BENEFICENTE UNIÃO DO VEGETAL.* ...... 8

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Comm'r of Internal Revenue*, 170 F.3d 173 (3d Cir. 1999). .......................................... 10
*Alamo v. Clay*, 137 F.3d 1366 (D.C. Cir. 1998). ........................................................................... 8
*Allen v. Wright*, 468 U.S. 737 (1984). .......................................................................................... 8
*Am. Guidance Found., Inc. v. United States*, 490 F. Supp. 304 (D.D.C. 1980). .......................... 5
*Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58 (D.D.C. 2003). ............................ 2, 5
*Arlie Found., Inc. v. United States*, 826 F. Supp. 537 (D.D.C. 1993). ........................................ 2
*Arrington v. Dist. of Columbia*, 597 F. Supp. 2d 52 (D.D.C. 2009). ............................................ 6
*Better Bus. Bureau of Wash., D.C. v. United States,* 326 U.S. 279 (1945). ................................. 3
*Bob Jones Univ. v. United States*, 461 U.S. 574 (1983). ............................................................. 2
*Branch Ministries v. Rossotti*, 211 F.3d 139 (D.C. Cir. 2000). .................................................. 10
*Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc.
   v. United States*, 111 F. Supp. 3d 34 (D.D.C. 2015)............................................................ 1, 3
*Fam. Tr. of Mass., Inc. v. United States*, 892 F. Supp. 2d 149 (D.D.C. 2012). ............................ 2
*Finnbin, LLC v. Consumer Prod. Safety Comm'n*, --- F.4th ---, 2022 WL 3036743 (D.C. Cir.
   Aug. 2, 2022). ........................................................................................................................ 7
*Found. of Hum. Understanding v. United States*, 88 Fed. Cl. 203 (2009), *aff'd*, 614 F.3d 1383
   (Fed. Cir. 2010). ..................................................................................................................... 6
*Freedom Church of Revelation v. United States*, 588 F. Supp. 693 (D.D.C. 1984). ..................... 1
*Golden Rule Church Ass'n v. Comm'r of Internal Revenue*, 41 T.C. 719 (1964). ......................... 4
*Gonzales v. O Centro Espírita Beneficente União de Vegetal,* 546 U.S. 418 (2006)................. 8, 9
*Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90 (2d. Cir. 2007). ....................................... 10
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). ................................................................. 7
*Marino v. Nat'l Oceanic & Atmospheric Admin.*, 33 F.4th 593 (D.C. Cir. 2022)........................ 8
*Merck & Co., Inc. v. United States*, 652 F.3d 475 (3d Cir. 2011). ............................................... 2
*Sherwin-Williams Co. v. United States*, 403 F.3d 793 (6th Cir. 2005).......................................... 2
*Spiritual Outreach Soc'y v. Comm'r of Internal Revenue*, 927 F.2d 335 (8th Cir. 1991). ............. 6
*United States v. Carroll*, 667 F.3d 742 (6th Cir. 2012). ............................................................... 8
*United States v. Christie*, 825 F.3d 1048 (9th Cir. 2016). ........................................................... 9
*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber, Cork, Linoleum &
   Plastic Workers of Am.*, 461 U.S. 757 (1983)........................................................................ 4
*Warth v. Seldin*, 422 U.S. 490 (1975). ......................................................................................... 8

**Statutes**

26 U.S.C. § 170................................................................................................................... 1, 5, 11
26 U.S.C. § 501.......................................................................................................................passim
26 U.S.C. § 509....................................................................................................................... 1, 5
42 U.S.C. § 2000bb-1. ............................................................................................................. 6, 7

**Regulations**

26 C.F.R. § 1.501. ........................................................................................................................ 3

The Defendants submit the following reply in support of their Motion for Summary Judgment. Summary judgment for the Defendants on all pending counts is appropriate because no genuine issue of material fact exists, Iowaska Church of Healing (Iowaska) cannot prove that it is entitled to tax-exempt status under 26 U.S.C. § 501(c)(3), plaintiff lacks standing to assert a claim or defense with respect to the Religious Freedom Restoration Act, and, in any event, because the Defendants have not violated the Religious Freedom Restoration Act. Additionally, Iowaska did not respond to the Defendants' Statement of Material Facts. Doc. No. 24; Doc. No. 25. Thus, the Court should deem the Defendants' Statement of Material Facts (Doc. No. 23-2) as admitted. LCvR 7(h).

I. **The Court Should Deny Summary Judgment for the Plaintiff and Grant Summary Judgment for the Defendants as to Count One because Iowaska Church of Healing is not Entitled to Tax-Exempt Status.**

Iowaska has not met the criteria under 26 U.S.C. § 501(c)(3) for tax exempt status and Iowaska failed to meet the exception to private foundation status under Section 509(a)(1) as a church defined in Section 170( (b)(1)(A)(i).

Iowaska can only be exempt from federal income taxes under Section 501(a) and (c)(3) if it can establish the following: "(1) it is organized and operated exclusively for an exempt purpose; (2) its net earnings do not inure to the benefit of any private shareholder or individual; and (3) its activities do not . . . [in substantial part] . . . attempt to influence legislation." *Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 111 F. Supp. 3d 34, 39 (D.D.C. 2015) (cleaned up). The burden is on Iowaska to prove that it is entitled to tax-exempt status. *Freedom Church of Revelation v. United States*, 588 F. Supp. 693, 696 (D.D.C. 1984) (citations omitted). Additionally, even if Iowaska otherwise meets these criteria, it "will nevertheless fail to qualify for tax-exempt status if its exemption-related activities violate public policy." *Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58, 62 n. 2 (D.D.C.

1

2003); *see also Bob Jones Univ. v. United States*, 461 U.S. 574, 582 (1983) ("To be eligible for an exemption under that section, an institution . . . must not be contrary to public policy."). The entity requesting tax-exempt status carries the burden to show it has met the statutory requirements for status under Section 501(c)(3). *Fam. Tr. of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012). So Iowaska must show not only that the Service's determination was incorrect, but also that it is entitled to tax-exempt status. *Id*

    A. <u>The Service's determinations as to other organizations' entitlement to tax-exempt status under Section 501(c)(3) are irrelevant.</u>

Iowaska asks the Court to take judicial notice of Service's determinations that other organizations which use ayahuasca were entitled to tax-exempt status under Section 501(c)(3). Doc. No. 24 at 4–6. Iowaska also argues that, because other organizations using ayahuasca were granted tax-exempt status, the Service erred in denying tax-exempt status to Iowaska. *Id.* at 6–11. Both arguments are incorrect.

The scope of the Court's review is limited to the administrative record, specifically the Service's conclusions and grounds for those conclusions, *Arlie Found., Inc. v. United States*, 826 F. Supp. 537, 548 (D.D.C. 1993), and "disparate treatment is not ordinarily considered a defense to tax liability." *See Merck & Co., Inc. v. United States*, 652 F.3d 475, 487 (3d Cir. 2011). "[I]f taxpayers could routinely challenge tax assessments by pointing to others who had not been compelled to pay under similar circumstances, the IRS would be swamped by collateral litigation of this kind rather than being able to focus on whether the taxpayer actually complied with the law—which is, in the end, the taxpayer's legal obligation." *Id.*; *see also Sherwin-Williams Co. v. United States*, 403 F.3d 793, 798 (6th Cir. 2005). In addition, as Iowaska concedes, "public policy analysis must be applied specifically 'to the person.'" Doc. No. 24 at 9. Thus, Iowaska is wrong to assume that it is similarly situated to any other organization that has supposedly been granted

2

tax exempt status, because whether or not Iowaska is entitled to tax exempt status ultimately focuses on the law as it applies to Iowaska, not some other organization.

> B. The Service correctly determined that Iowaska Church of Healing was not entitled to tax-exempt status under Section 501(c)(3).

As explained in the Service's previously filed memorandum of law, the Service determined Iowaska Church of Healing did not qualify for exemption from federal income taxation under Section 501(c)(3) because Iowaska was not organized and operated exclusively for exempt purposes under 26 U.S.C. § 501(c)(3) due to Iowaska's activities being illegal under federal law and in violation of public policy. *Id.* The Service's determination is correct, and therefore, Iowaska is not entitled to tax-exempt status under 26 U.S.C. § 501(c)(3).

To be exempt as an organization described in Section 501(c)(3), an organization must be both organized and operated exclusively for one or more exempt purposes. Because the statute is written in the conjunctive ("organized *and* operated"), Iowaska must meet both criteria. 26 C.F.R. § 1.501 (c)(3)–1(a); *Educ. Assistance Found.*, 111 F. Supp. 3d at 41. If an organization fails to meet either the organizational test or the operational test, it is not exempt. 26 C.F.R. § 1.501 (c)(3)-1(a)(1). While an incidental non-exempt purpose or activity would not necessarily disqualify Iowaska from tax-exempt status, a substantial non-exempt purpose or activity does bar it from exemption, regardless of the number or quality of exempt purposes. *Better Bus. Bureau of Wash., D.C. v. United States,* 326 U.S. 279, 283 (1945).

Iowaska's self-stated mission "is to help individuals attain healing of the mind, body, and spirit through the sacred Sacrament of Ayahuasca." Dkt. No. 16, ¶ 17. Iowaska does not contest the Service's finding that a substantial purpose of Iowaska is the sale and distribution of the Sacrament of Ayahuasca, which contains dimethyltryptamine (DMT), for use by its participants during its ceremonies. Doc. No. 24 at 6–9; *see also* J.A. Ex. 3 at 6–7 (Iowaska's Articles of

3

Incorporation). Nor does Iowaska contest that its primary activity was conducting ceremonies during which the Sacrament of Ayahuasca was distributed to its participants for their use. Doc. No. 24 at 6–9; *see also* J.A. Ex. 7 at 2–3. Iowaska argues only that its activities do not violate public policy, attempting again to use documents outside of the administrative record to show that the Service has granted tax-exempt status to other organizations which use ayahuasca. Doc. No. 24 at 6–9. As explained *above* in Section I.A., this argument has no merit.

Iowaska insists that the Service has not asserted a legitimate public policy. Doc. No. 24 at 9–10. But because Congress has extensively legislated in the area of controlled substances, the use of illegal drugs, including DMT, violates public policy. *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983); *see also* 21 U.S.C. §§ 812, Schedule I(c)(6), 841, 823. Iowaska has cited no cases to refute that the use of illegal drugs violates public policy. Doc. No. 24 at 9–10. Iowaska's attempt to rely on *Golden Rule Church Ass'n* is misplaced because the activities in question were not illegal. *Golden Rule Church Ass'n v. Comm'r of Internal Revenue*, 41 T.C. 719, 723 (1964) (holding that the Golden Rule Church was organized and operated exclusively for religious purposes, even though the church operated businesses which, among other things, manufactured various goods from redwood lumber, provided laundry and dry cleaning services to the public, operated a swimming pool, operated a restaurant, and operated a nursery).

Rather, Iowaska does not argue that its activities are legal, only that its activities *should be* legal. Doc. No. 24 at 6–11. This is not a determination for the Service.[1] Iowaska therefore has not met its burden, and its application for tax-exempt status should be denied under 26 U.S.C.

---

[1] If the DEA ultimately concludes that Iowaska's use of ayahuasca is not illegal (as that is a determination only the DEA can make), Iowaska can then seek reconsideration of its tax-exempt status based on these changed circumstances.

4

§ 501(c)(3). The Service did not err when reasoning that Iowaska's use of the Sacrament of Ayahuasca was illegal under federal law and in violation of public policy. J.A. Ex. 18 at 1. And because these activities violate public policy, even if Iowaska could meet all other criteria under 26 U.S.C. § 501(c)(3), Iowaska "will nevertheless fail to qualify for tax-exempt status if its exemption-related activities violate public policy." *Arlie Found. v. Internal Revenue Serv.*, 283 F. Supp. 2d 58, 62 n. 2 (D.D.C. 2003).

C. In the alternative, even if Iowaska is an exempt organization under Section 501(c)(3), the Service correctly determined that Iowaska Church of Healing does not qualify as a church as defined in Section 170(b)(1)(A)(i).

Even if Iowaska qualified as an exempt organization under Section 501(c)(3), which it does not for the reasons articulated above and in Defendants' motion for summary judgment, it would be presumed to be a private foundation because it fails to meet the asserted exception to private foundation status under Section 509(a)(1) as a church defined in Section 170(b)(1)(A)(i).

Iowaska's only argument that it qualifies as a church under Section 170(b)(1)(A)(i) is that other organizations which use ayahuasca have qualified as churches. Doc. No. 24 at 6–11. For the reasons explained above, the Service's determinations as to other organizations are irrelevant here. Moreover, Iowaska fails to explain how the congregation or religious services held by those other organizations are similar to those of Iowaska.

Significantly, Iowaska does not contest the underlying reasons for the Service's determination that *it* does not qualify as a church. Doc. No. 24 at 6–11. As Defendants explained in their motion for summary judgment, the administrative record fails to establish that Iowaska has an established congregation or that it holds regular religious services—items of "central importance" to the determination that an organization is a church. *Am. Guidance Found., Inc. v. United States*, 490 F. Supp. 304, 306 (D.D.C. 1980). By failing to address this argument, Iowaska

has conceded the issue. *See, e.g.*, *Arrington v. Dist. of Columbia*, 597 F. Supp. 2d 52, 58 (D.D.C. 2009) (collecting cases) .

The five ceremonies Iowaska held over three weekends in 2019 are far less than those found to be insufficient to establish regular religious services by the Federal Circuit in *Foundation of Human Understanding* or by the Eighth Circuit in *Spiritual Outreach Society*. Iowaska did not refute this. Doc. No. 24 at 6–11.

Similarly, Iowaska's twenty members from six states and two foreign countries are insufficient to constitute an established congregation. Only three or four members attended each ceremony, and only four members have attended multiple retreats. J.A. Ex. 7 at 7–8. Further, it appears that seven members have not attended a single ceremony. Doc. No. 22 at 15, n. 6. The administrative record conclusively shows that Iowaska does not have an established, continuing, cohesive congregation and Iowaska's response does not contest these facts or argument. Doc. No. 24 at 6–11.

## II. The Court Should Deny Summary Judgment for the Plaintiff and Grant Summary Judgment for the Defendants as to Count Two.

The Religious Freedom Restoration Act (RFRA) provides that the "Government shall not substantially burden a person's exercise of religion" unless the government "demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a) & (b). "A person whose religious exercise has been burdened . . . may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," subject to the requirements of Article III standing. 42 U.S.C. § 2000bb-1(c).

A. <u>Iowaska lacks standing to assert a RFRA claim.</u>

Standing to raise RFRA as a claim or defense in federal court is "governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000bb-1(c). To establish standing, a plaintiff must prove: (1) it has suffered an "injury in fact"; (2) that injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

In its argument, Iowaska admits what it ultimately seeks here: not tax-exempt status, but rather a determination by one government agency "to bolster its religious exemption application on file with [another government] agency." Doc. No. 24 at 18. Iowaksa contends that an adverse determination by the Service "would likely put [its] pending DEA religious exemption application at a much higher risk of being denied." *Id.* at 11–12. This argument fails, at a minimum, the second and third requirements for establishing Article III standing. Even assuming plaintiffs have identified a cognizable Article III injury, that injury is not fairly traceable to IRS because, as Iowaska concedes, Doc. No. 24 at 11, the Service lacks statutory authority to grant exemptions from the CSA; DEA alone has that authority. Thus, if DEA were to deny Iowaska an exemption from the CSA, that decision would be fairly traceable only to DEA. And for similar reasons, it is speculative at best that a decision by IRS to deny Iowaska tax-exempt status would have any influence on whether DEA decides to grant Iowaska an exemption from the CSA. DEA has no statutory duty to consult the Service in deciding whether or not to grant a CSA exemption, nor has Iowaska alleged or shown that DEA has ever done so in the past. So, there is no redressability, no standing, and no Article III jurisdiction here. *See, e.g.*, *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, --- F.4th ---, 2022 WL 3036743, at *5 (D.C. Cir. Aug. 2, 2022); *United States v. Carroll*,

667 F.3d 742, 745–46 (6th Cir. 2012). Iowaska cites no legal reason why DEA would consider the Service's determinations in evaluating Iowaska's religious exemption application.

In attempting to prove Article III standing against the Service, Iowaska also mentions "the shadow of the 'illegal' label," the desire to avoid a "significant black mark" on its DEA application, elimination of "the stigma currently attached to [Iowaska]," and validation of "their belief systems and sacramental practices." *Id.* at 18. These assertions fail to identify cognizable Article III injury. *Allen v. Wright*, 468 U.S. 737, 755 (1984) (abrogated on other grounds) (alleged stigma does not provide a cognizable injury); *Alamo v. Clay*, 137 F.3d 1366, 1370 (D.C. Cir. 1998) (reputational injury does not confer standing). Iowaska's allegations of the alleged economic impact of the Service's determination, citing the hypothetical potential loss of charitable contributions, Doc. No. 24, at 18–19, is far too conjectural to provide Article III injury, and fairly traceable in any event, not to the Service, but to the independent decisions of putative third-party donors. *Warth v. Seldin*, 422 U.S. 490, 509 (1975).

In sum, even if Iowaska were to prevail on all counts here, the grant of tax-exempt status under Section 501(c)(3) and a determination that does not address the legality of Ayahuasca would not grant Iowaska the protection from prosecution that would allow it to continue its ceremonies. Iowaska has not even demonstrated that a favorable decision here would at all impact, much less favorably impact, its pending application before DEA. *See generally,* Doc. No. 24. Iowaska, therefore, lacks standing because a favorable decision would not redress the alleged injuries. *See, e.g.*, *Marino v. Nat'l Oceanic & Atmospheric Admin.*, 33 F.4th 593 (D.C. Cir. 2022).

B. <u>Defendants have not violated the RFRA, as Iowaska Misrepresents the Holding in *Gonzalez v. O Centro Espírita Beneficente União do Vegetal*.</u>

Iowaska admits that the Supreme Court opinion in *Gonzalez v. O Centro Espírita Beneficente União de Vegetal (UDV)* does not render the use of ayahuasca legal in all situations.

Doc. No. 24 at 19. However, Iowaksa still misrepresents the ultimate holding of *O Centro*. *Id.* at 19–20.

At issue in *O Centro* was whether the Government, at the *preliminary injunction* stage, had failed to establish a compelling interest in barring the UDV's use of Ayahuasca. *O Centro*, 546 U.S. 418, 439 (2006). Contrary to Iowaska's argument, the Supreme Court did not find that there was *no* compelling government interest, only that the Government had failed to prove one at that point in the litigation. *Id*. Nor did the Supreme Court determine that all use of Ayahuasca was protected by RFRA, only that there, UDV's use could not be barred based on the reasons put forth by the Government in the preliminary injunction briefing, leaving open the possibility that the United States could raise different reasons on remand. *Id.* Furthermore, *O Centro* involved actual seizure of personal property and a threat of prosecution, not tax-exempt status as Iowaska seeks here. Government interests in prosecution are necessarily different than Government interests in taxing income of organizations. Thus, *O Centro* simply does not support the propositions advanced by Iowaska.

That Iowaska has not received an exception from the DEA to the CSA is also relevant to Iowaska's argument that the Service's determination of illegality imposed a substantial burden because Iowaska had to pay taxes. After *O Centro*, courts have upheld the federal government's denials of RFRA exceptions to the CSA. *See, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (denying exception to CSA for sacramental cannabis use because the government had a compelling interest in "mitigating the risk that cannabis from the Ministry will be diverted to recreational users"). Given that Iowaska admits it has not received an exemption from the criminal law and that its application for such an exception very well may be denied, it made sense for the Service to analyze Iowaska's application for tax exempt status based on the current state of

9

affairs—in which Iowaska is subject to criminal prosecution if it continues to distribute DMT. The DEA's determination of Iowaska's request for an exception to the criminal law could be relevant to the Service's determination of Iowaska's tax-exempt status. But it remains true that it is the DEA and not the Service that can grant Iowaska such an exception. RFRA should *not* be understood to compel the Service to pre-judge that exception request as a predicate to its tax-exempt-status determination.

Finally, participation in the federal tax system is the least restrictive means of furthering the Government's interest. *See Branch Ministries v. Rossotti*, 211 F.3d 139, 143–44 (D.C. Cir. 2000) (revocation of Church's tax-exempt status for engaging in partisan political activity did not violate RFRA); *see also Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90, 92–93 (2d. Cir. 2007) (requirement that individual with religious objections to military activities or spending pay federal taxes did not violate the free exercise clause or RFRA); *Adams v. Comm'r of Internal Revenue*, 170 F.3d 173, 179 (3d Cir. 1999) (rejecting argument that RFRA and the free exercise clause required the Service to accommodate the plaintiff's religious beliefs so that her tax payments did not fund the military because the "least restrictive means of furthering a compelling interest in the collection of taxes . . . is in fact, to implement that system in a uniform, mandatory way, with Congress determining in the first instance if exemptions are to [be] built into the legislative scheme"). Iowaska does not contest this. *See generally,* Doc. No. 24. Thus, the Court should grant summary judgment to the United States as to Count II.

### III. Conclusion

Iowaska is using this suit as a vehicle by which to bolster its application for exemption to the DEA, seeking a determination by both this Court and the Service that its activities are legal. It believes the DEA will either be bound by these determinations or heavily persuaded by them. A favorable decision in this case will not give Iowaska what it ultimately seeks: the DEA waiver.

For the reasons explained above, Iowaska Church of Healing is not entitled to tax-exempt status under 26 U.S.C. § 501(c)(3) and Iowaska does not meet the requirements for church status under 26 U.S.C. § 170(b)(1)(A)(i), therefore, the Service made the correct determination. Nor have the Defendants violated RFRA by ruling that Iowaska's activities are illegal. The Court should therefore deny Plaintiff's motion for summary judgment and grant summary judgment for the Defendants.

Dated: September 1, 2022

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Emily K. Miller*
EMILY K. MILLER (KY #97725)
KRISTINA M. PORTNER (DC #1002793)
JOSEPH E. HUNSADER (DC #453328)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-7509 (v)
202-514-6866 (f)
Emily.K.Miller@usdoj.gov
Kristina.M.Portner@usdoj.gov
Joseph.E.Hunsader@usdoj.gov
*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those parties registered to receive it.

                                           */s/ Emily K. Miller*
                                           EMILY K. MILLER
                                           Trial Attorney
                                           United States Department of Justice, Tax Division