

**Department of the Treasury**
**Internal Revenue Service**
P.O. Box 2508
Cincinnati, OH 45201

Date: JUN 16 2020

Employer ID number:
83-2192122

Contact person/ID number:

Contact telephone number:
513-

Contact fax number:
855-775-7261

IOWASKA CHURCH OF HEALING
C/O WILLIAM A BOATWRIGHT
DAVIS BROWN LAW FIRM
215 10TH ST STE 1300
DES MOINES, IA  50309

UIL: 501.03-20
     504.02-00
     501.35-00

**Legend:**

B = September 24, 2018
C = Iowa
D = Ayahuasca
E = Florida
f dollars = $60
G = Dado Kantarevic
j dollars = $900
K = 20
m dollars = $333
n dollars = $1,000

Dear Applicant:

We considered your application for recognition of exemption from federal income tax under Internal Revenue Code (IRC) Section 501(a). We determined that you don't qualify for exemption under IRC Section 501(c)(3). This letter explains the reasons for our conclusion. Please keep it for your records.

**Issues**
Do you qualify for exemption under IRC Section 501(c)(3)? No, for the reasons stated below.

**Facts**
You were formed on B, in the state of C. Your Articles of Incorporation state that your purposes include offering the public access to spiritual growth, development and healing through the sacred sacrament of D provided under the guidelines of South American indigenous traditions and cultural values. In addition, you provide education, guidance and support to ceremony participants. Finally, you provide access to various healing modalities such as group meditation and Reiki. Your articles also contain a dissolution clause ensuring that your assets will be distributed for Section 501(c)(3) purposes if you dissolve.

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

Your Form 1023 states that your mission is to inspire individuals to seek and embrace authentic, self-realized healing of the mind, body and spirit using the sacred, indigenous plant-medicine D. You will also provide veterans the opportunity to access healing programs unique to their recovery for free and/or a reduced cost. You will accomplish your purposes in a variety of ways including the operation of a spiritual church that conducts regular worship services, the operation of adult integration and communion meetings, various educational and mission groups and outreach designed to provide relief services to veterans. Future plans include assessing the needs of local and global communities paying attention to Native North and South American tribes and populations. You will have locations in C and E.

Membership is open to all individuals who have the sincere intention to become a part of a spiritually directed community in which all members live by a code of love, unity, integrity and respect for all living things. Members must have a sincerity of character and a willingness to live through one's higher self that is self-evident as witnessed by all church members, officers, elders and spiritual leaders. Church leaders and board members have the right to assess, discuss, vote and if necessary, terminate the membership and involvement of any individual who disregards the church's doctrine and the universal laws of respect, integrity, harmony, love and light.

Prospective members must pay a one-time membership fee of f dollars, which may be waived under certain circumstances. Membership does not qualify an individual to have access to sacred medicinal ceremonies where the sacrament of D is used. To partake in the sacrament an individual must be 18 years-of-age or older and successfully pass all pre-qualification requirements including a medical assessment.

You plan to offer public access workshops providing education on sacred indigenous culture and tribal practices including the use of D as a healing medicine and spiritual tool. Sunday church services and programs will include group integration and communion. Members will commune through song, music, reflection and readings from the D manifesto. Spiritual experiences with the sacrament will also be shared and integration provided by mental health counselors, ministers, facilitators and spiritual coaches.

Your goal is to offer members the opportunity for spiritual growth and healing with the sacrament of D through sacred ceremonies. Members will be offered various ceremony options with skilled facilitators and healers including one-on-one, small group or large group ceremonies. Typically, ceremonies will occur on Friday, Saturday and Sunday consisting of two evening ceremonies and the option for a daytime one. D is the only substance used in the ceremonies, the use or consumption of any other substances is prohibited. Members undergo thorough medical and psychological evaluation prior to participating in a ceremony. Drug testing along with a routine search of bags/belongings are also conducted to ensure a safe and sacred environment. Medical professionals are present during ceremonies along with healers, facilitators and ministers. Relevant mental, emotional and spiritual integration is provided to each participant. Group integration and communion is offered the morning following and evening ceremony. Private, one-on-one spiritual coaching or counseling is offered to those who seek further guidance and integration on a more ongoing basis.

D is consumed in the form of a tea that is brewed using water and several plant ingredients. The plant ingredients naturally contain a hallucinogenic alkaloid DMT. DMT is a Schedule 1 drug under the Controlled Substances Act (CSA). The CSA contains a provision authorizing the US Attorney General to waive the requirement for DEA registration of certain manufacturers, distributors and dispenser of controlled substances. You have applied for the exemption, but it has not yet been approved. The DEA provides guidance regarding petitions for religious exemptions from CSA under the RFRA. The guidance states in #7 that the petitioner may

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

not engage in any activity prohibited under the CSA or its regulations unless the petition has been granted and the petitioner has applied for and received a DEA Certificate of Registration. You have not asserted that your religious exercise has been burdened in violation of 42 U.S.C. Section 2000bb-1(a) as a claim or defense in a judicial proceeding in any federal or state court.

Your Board of Directors currently consists of five voting members, three of whom are also officers. G is your President and Treasurer, and a Director. He is also one of the Healers. You will enter into an employment agreement with him and his salary will be based on similarly situated employees in the area. Two of your other board members will also be hired as Healers, medicine men, or family therapists, with compensation based on local area analysis. Each healer has the training and experience to hold his position. G, your founder, is a "designated director", serving as a director until his resignation or this position is terminated. He also serves as the primary Healer conducting and leading all sacramental ceremonies and one-on-one healings.

Your Bylaws provide in Article V for reservation of rights and powers of the founder. Reserved rights and powers include approval of any name change; approval and adoption of any strategic or long-term plans including financial/capital plans; and approval of the development, significant modification, termination or sponsorship of any religious or educational programs. Article VI provides the approval procedure used by the founder. The founder may designate a successor in the event of his incapacity or inability to act during his lifetime. He cannot be removed from his position unless the Bylaws are amended, however, under Article X he would have to approve any amendments.

Your financial data indicates that over 90% of your revenues will be derived from fees paid by church members for participating in your weekend ceremonies. You expect to charge each member j dollars to attend and participate in your Sacramental ceremonies in your first year of operations with a 10% increase the next year and a 15% increase the following year. Veterans will be permitted to attend at a reduced rate or no charge. In addition to ceremony fees charged to members you expect to receive donations and membership fees. Your expected expenses include compensation, occupancy costs, and materials for the ceremonies.

You requested classification as a church under IRC Sections 509(a)(1) and 170(b)(1)(A)(i). Your form of worship includes the sacrament of D, sacred ceremonies, prayer, reflection, singing/medicine songs, traditional icaros, worship with musical instruments, reiki and energy healing, readings from the D manifesto and group communion/integration. You follow the Universal Law of Respect which is derived from the D Manifesto. You stated that you offer regularly scheduled religious services every Sunday afternoon, which are open to members and the public. You do not have a permanent facility. Currently you have K members and have plans to increase your membership.

We requested additional information regarding your activities. Your activities consist of weekend ceremonies and services (40%); spiritual medication, prayer and preparation for weekend ceremonies and services (10%); prospective members paperwork/correspondence (20%); spiritual coaching and integration of members via phone or in person (15%); cleaning/maintenance/shopping/travel/meal preparation (10%); and recordkeeping (5%). You have not yet begun to present seminars or other public programming. You do not have a permanent facility, you are currently holding ceremonies in E on private property owned by one of your directors. You initially planned to establish your primary location in C, however, upon advice of legal counsel you have not done so. Your legal counsel is of the opinion that C law is unsettled with regard to the legality of the use of D in religious ceremonies. E, on the other hand, has a state-level version of the federal Religious Freedom Restoration Act of 1993 (RFRA).

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

You have held ceremonies twice a month for the last year or so. Members pay m dollars per ceremony for a total of n dollars if he or she participates in all three over a weekend. The fee includes indoor accommodations, beds, showers, cleaning, healthy meals, hands-on energy healing, spiritual services and coaching, integration and follow-up. You may offer reduced rates to those experiencing financial hardship. Only formal members are permitted to participate in weekend ceremonies. Your Sunday afternoon services are part of the weekend ceremonies. The weekend consists of sacred ceremonies on Friday and Saturday as well as post ceremonial integration services Sunday morning through afternoon. All members not participating in the sacramental ceremonies are welcome at the Sunday services via phone or video call. Average attendance is four to five members and two healers. Most members that attend Sunday services have participated in the sacramental ceremonies on Friday and Saturday. You have conducted five ceremonies over three weekends. Each ceremony involved three or four members. Four of your K members have attended multiple retreats. You have waived your membership and ceremony fees multiple times.

D tea was used during each of your weekend ceremonies, although your CSA exemption has not been granted. Securing the federal exemption will offer you protection against any charges related to the CSA. The protections afforded under the RFRA only apply to federal laws and does not extend to state laws governing controlled substances.

You determine whether a member is ready to participate in the ceremonies using the tea after he or she arrives for a weekend ceremony. New members are given a copy of the Rules and Regulations for Participating in the Sacrament of D. The member is interviewed to ensure that the rules and regulations have been followed. A medical history/condition worksheet is also completed. If deemed ready, the member is given the tea and is carefully monitored by one of the healers. In the future medical professionals will be present and drug tests will be performed.

Prospective members must fill out a membership application and pay a f dollars fee (unless waived or reduced). The application is reviewed by the President and Vice President. The review takes into consideration whether the individual displays sincerity of thought and spiritual reflection. The applicant's personal need for spiritual healing and willingness to explore new avenues of evolution is also considered.

Formal written membership applications were received from your current members. Your K members live in multiple states and countries. Members do not participate on a weekly or other scheduled basis but remain in contact with your healers via phone and email.

You maintain a website. The site contains information about your activities, beliefs and doctrines, and the use of D in religious ceremonies/retreats. Information regarding your weekend ceremonies is provided, but pricing information is not available.

**Law**
IRC Section 501(c)(3) provides for the exemption from federal income tax of corporations organized and operated exclusively for charitable or educational purposes, provided no part of the net earnings inures to the benefit of any private shareholder or individual.

Treasury Regulation Section 1.501(c)(3)-1(a)(1) that, in order to be exempt as an organization described in Section 501(c)(3), an organization must be both organized and operated exclusively for one or more exempt purposes. If an organization fails to meet either the organizational test or the operational test, it is not exempt.

Treas. Reg. Section 1.501(c)(3)-1(b)(1)(i) provides that an organization is organized exclusively for one or more exempt purposes only if its articles of organization limit its purposes to one or more exempt purposes and do not expressly empower it to engage, otherwise than as an insubstantial part, in activities which in themselves are not in furtherance of one or more exempt purposes.

Treas. Reg. Section 1.501(c)(3)-1(c)(1) provides that an organization operates exclusively for exempt purposes only if it engages primarily in activities that accomplish exempt purposes specified in Section 501(c)(3) of the Code. An organization will not be operated exclusively for exempt purposes if more than an insubstantial part of its activities are not in furtherance of an exempt purpose.

21 U.S.C. Section 812(c), Sch. I(c)(5) lists dimethyltryptamine (DMT) as a hallucinogenic substance and includes it on schedule I of the Schedules of Controlled Substances. A schedule I substance is a substance that (1) has a high potential for abuse; (2) has no currently accepted medical use in treatment in the United States; and (3) there is a lack of accepted safety for use of the drug under medical supervision.

21 U.S.C. Section 841(a), known as The Controlled Substances Act, states that it is illegal for anyone to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance.

42 U.S.C. Section 2000bb-1, known as the Religious Freedom Relief Act (RFRA), states that
    (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
    (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
        (1) is in furtherance of a compelling governmental interest; and
        (2) is the least restrictive means of furthering that compelling governmental interest.
    (c) Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

Article VI, Clause 2 of the United States Constitution states that federal laws prevail over conflicting or inconsistent state laws.

Revenue Ruling 71-447, 1971-2 C.B. 230, states that under common law, the term "charity" encompasses all three major categories of religious, educational, and charitable purposes. All charitable trusts, educational or otherwise, including religious trusts, are subject to the requirement that the purpose of the trust may not be illegal or contrary to public policy. Citing Restatement (Second), Trusts, (1959) Sec. 377, Comment c: "A Trust for a purpose the accomplishment of which is contrary to public policy, although not forbidden by law, is invalid." Restatement (Second), of Trusts, Section 377 states that a charitable trust cannot be created for a purpose which is illegal. The first comment illustrates the rule, indicating that where the trust estate is to be used for a criminal purpose, the trust is invalid. Thus, "a trust for the promotion of polygamy...is invalid."

Rev. Rul. 75-384, 1975-2 C.B. 204, holds that a nonprofit organization, whose purpose was to promote world peace, disarmament, and nonviolent direct action, did not qualify for exemption under IRC Section 501(c)(3) or

(c)(4). The organization's primary activity was to sponsor antiwar protest demonstrations in which demonstrators were urged to violate local ordinances and commit acts of civil disobedience. Citing the law of trusts, the ruling stated that all charitable organizations are subject to the requirement that their purposes cannot be illegal or contrary to public policy.

In Better Business Bureau of Washington, D.C., Inc. v. United States, 326 U.S. 279 (1945), the Supreme Court held that the "presence of a single . . . [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly . . . [exempt] purposes."

In Harding Hospital, Inc. v. United States, 505 F.2d 1068, 1071 (6th Cir. 1974), the court held that an organization has the burden of proving that it satisfies the requirements of the particular exemption statute. The court noted that whether an organization has satisfied the operational test is a question of fact.

In American Guidance Foundation, Inc. v. United States, 490 F. Supp. 304 (D.D.C. 1980), the court held that a religious organization exempt under IRC Section 501(c)(3) was not a church described in Section 170(b)(1)(A)(i). Throughout its existence, the membership consisted of the founder and members of his immediate family. The organization made no real effort to convert others or to extend its membership beyond the immediate founder's family. Worship services were conducted in the founder's apartment, which was used primarily for non-religious purposes. The organization's "organized ministry" consisted of a single self-appointed clergyman. Recorded religious messages were distributed by telephone tape and religious instruction consisted of a father preaching to his son. The court discussed the following "14 criteria" developed by the Service to aid in the evaluation of applications for church foundation status:
    (1) a distinct legal existence;
    (2) a recognized creed and form of worship;
    (3) a definite and distinct ecclesiastical government;
    (4) a formal code of doctrine and discipline;
    (5) a distinct religious history;
    (6) a membership not associated with any other church or denomination;
    (7) an organization of ordained ministers/a complete organization of ordained ministers ministering to their congregations;
    (8) ordained ministers selected after completing prescribed courses of study;
    (9) literature of its own;
    (10) established places of worship;
    (11) regular congregations;
    (12) regular religious services;
    (13) Sunday schools for the religious instruction of the young; and
    (14) schools for the preparation of its ministers.

No single factor was controlling and all fourteen might not be relevant to a given determination. However, the court further explained that at a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role. It is not enough that a corporation believes and declares itself to be a Church. Nor is it sufficient that the applicant prepares superficially responsive documentation for each of the established IRC criteria. To hold otherwise would encourage sham representations to the IRS and result in adverse tax consequences to the public at large. In this instance, AGF does not employ recognized, accessible channels of

instruction and worship. There is little if any evidence that it seeks to reach or serve a congregation. Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church.

In Church of Eternal Life and Liberty, Inc. v. Commissioner, 86 T.C. 916, 924 (1986), the Tax Court concluded that the organization was not a church. The organization seemed to have intentionally pursued a policy that discouraged membership that the court believed served the private purposes of its founder. The court also stated that although fundamental to determining whether an organization is a church, religious purposes alone do not serve to establish it as a church. Equally important are the means by which its religious purposes are accomplished…A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith…

In First Church of In Theo v. Commissioner, T.C. Memo 1989-16, the principal activities of the organization included the writing of books and booklets, the publication and distribution of religious literature, organizing training materials, and working in the local Christian community. It disseminated its beliefs and practices by mailing releases to a group of 71 preachers, Christian workers and interested individuals. The organization was a "self-described non-membership organization" whose religious purposes were accomplished through the writing, publishing, and distribution of religious literature rather than through the regular assembly of a group of believers to worship together. The extent to which the organization brought people together to worship was incidental to its main function which consisted of a dissemination of its religious message through radio and internet broadcasts, coupled with written publications. "When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church." The court concluded that the organization "fail[ed] to satisfy the threshold criteria of communal activity necessary for a church."

In Spiritual Outreach Society v. Commissioner, 927 F. 2d 335 (1991), the organization maintained an outdoor amphitheater on its grounds at which the organization held bimonthly musical programs. The organization held a total of twenty gatherings during the two years at issue in the case. The musical programs always included congregational singing and opened and closed with a prayer facilitated by a minister. Also, during the two years at issue, the organization held several retreats on the church grounds "wherein followers of different religions met for the purpose of meditation study and spiritual advancement." A total of five wedding ceremonies were conducted in the organization's chapel by ministers from guest churches. The Tax Court was unpersuaded that "musical festivals and revivals...and gatherings for individual meditation and prayer by persons who don't regularly come together as a congregation for such purposes" was sufficient to satisfy the "cohesiveness factor which...is an essential ingredient of a 'church.'"

The Tax Court held that the organization failed to satisfy the associational test. The Court stated that some of the 14 criteria are of central importance. While the organization did meet some of the criteria, it did not meet enough. They failed to show they had an established congregation even though large numbers of people attended musical events on their property, nothing indicated that the participants considered it their church. Nor did they show a sufficient ministry to satisfy the organized ministry criteria because every minister who was involved in a function was a guest minister from another church. Finally, they didn't have a provision for the religious education of the young. SOS's claim that impecunious churches cannot afford religious instruction of its youth is misguided.

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

In <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 126 S. Ct. 1211 (2006) Members of the church received communion by drinking hoasca, a tea brewed from plants unique to the Amazon Rainforest that contained a hallucinogen regulated under Schedule I of the Controlled Substances Act (CSA), 21 U.S.C.S. Section 812(c), (Sched. I(c)). The Government conceded that the challenged application would substantially burden a sincere exercise of religion, but argued that this burden did not violate RFRA because applying the CSA was the least restrictive means of advancing three compelling governmental interests: protecting the church members' health and safety, preventing the diversion of hoasca from the church to recreational users, and complying with a 1971 United Nations Convention on Psychotropic Substances. The Court held that the church had effectively demonstrated that its sincere exercise of religion was substantially burdened, but that the Government failed to demonstrate that the application of the burden to the church would, more likely than not, be justified by the asserted compelling interests. Congress' placement of dimethyltryptamine (DMT) under Schedule I simply did not relieve the Government of the obligation to shoulder its burden under RFRA.

In <u>Foundation of Human Understanding v. United States</u>, 88 Fed. Cl. 203 (2009), the court found an organization that promoted spirituality through a particular form of meditation was not a church. The court referred to the 14 church characteristics published by the Service in the course of its factual findings, but ultimately decided the case by applying the associational test. The court stated that "plaintiff hasn't provided evidence as to the regularity, if any, with which its followers come together to practice. There is no evidence contained within the letters, emails, declarations, or, for example, in the form of records of attendance, that show a group of followers that regularly congregates in any form-whether virtually or in one another's physical presence… Moreover, there is evidence in the record that Foundation's religious practice neither requires nor promotes associational worship."

The court found the organization didn't provide regular religious services to an established congregation and concluded that "[t]he extent to which [the] Foundation brings people together to worship is incidental to its main function" of spreading its message through publication and broadcasting. Relying on case law that treated publishing activities as insufficient to confer church status and denied church status to entities whose associational activities were merely incidental to their publishing and broadcasting activities, the court held that the organization didn't qualify as a church.

In <u>Mysteryboy, Inc. v. Commissioner</u>, T.C. Memo 2010-13 (2010), the Tax Court held that the organization failed the operational test partly because the organization proposed to promote illegal activities.

**Application of law**
You are not organized and operated exclusively for exempt purposes under IRC Section 501(c)(3). An organization can be recognized as exempt under Section 501(c)(3) only if it shows that it is both organized and operated exclusively for charitable, educational, or other exempt purposes. If an organization fails to meet either the organizational test or the operational test, it is not exempt. Treas. Reg. Section 1.501(c)(3)-1(a)(1).

You do not satisfy the organizational test of Treas. Reg. Section 1.501(c)(3)-1(b)(1)(i). You are not organized exclusively for one or more exempt purposes, since your articles of organization do not limit your purposes to exempt purposes and expressly empower you to engage, otherwise than as an insubstantial part, in activities which in themselves are not in furtherance of one or more exempt purposes. You were formed, in part, to offer "the public access to spiritual growth, development and healing through the sacred sacrament of D." Under federal law, DMT distribution and use is illegal. The D tea used in the sacrament of D contains DMT. One of

the purposes for which you have been formed is an illegal purpose, to wit, the distribution of a controlled substance to individuals who are engaged in an illegal activity. Furthermore, your articles of incorporation expressly empower you to engage, otherwise than as an insubstantial part, in the distribution of D, an activity which in itself is not in furtherance of one or more exempt purposes. Rev. Rul. 71-447 and Rev. Rul. 75-384 state that all charitable organizations are subject to the requirement that their purposes cannot be illegal or contrary to public policy. See also Restatement (Second) of Trusts, Section 377, and Mysteryboy, Inc.

You do not satisfy the operational test of Treas. Reg. Section 1.501(c)(3)-1(c)(1). More than an insubstantial part of your activities is not in furtherance of an exempt purpose. Your primary activity is to conduct religious ceremonies using D. As noted above, the distribution of D is illegal. Federal law does not recognize any health or other benefits of D and classifies it as a controlled substance. 21 U.S.C. Section 812. Federal law prohibits the manufacture, distribution, possession, or dispensing of a controlled substance. 21 U.S.C. Section 841(a). (The fact that a state has legalized the use of D for religious purposes is not determinative because under federal law, the use of DMT is illegal. Federal law always prevails over conflicting or inconsistent state law. See U.S. Const. art. VI, cl. 2.) By advocating and engaging in activities that contravene federal law, and by enabling individuals to engage in an activity illegal under federal law, you serve a substantial nonexempt purpose. Like Better Business Bureau of Washington, D.C. regardless of the number or importance of your truly exempt purposes, the presence of a single nonexempt purpose, substantial in nature, has destroyed your exemption. You have failed to carry your burden of proving that these activities are in furtherance of an exempt purpose, or else are insubstantial. See Harding Hospital.

You have applied to the US Attorney General to waive in your case the requirement for DEA registration of certain manufacturers, distributors and dispensers of controlled substances as provided by the Controlled Substances Act, on the grounds that enforcing the prohibition of your use of D in your religious ceremonies will burden your free exercise of religion, as defined in the Religious Freedom Restoration Act (RFRA). A decision on your application is still pending. You have cited Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, an organization with activities strikingly similar to your own, in support of your exemption. Vegetal's position, however, is distinguishable from yours. Instead of applying for an exemption as you have done, Vegetal, after U. S. Customs seized a D shipment to it and threatened prosecution, filed a suit for declaratory and injunctive relief under 42 U.S.C. Section 2000bb-1(c) and won it, convincing the Supreme Court that applying the Controlled Substances Act to the UDV's sacramental D use violates RFRA. In short, your current position is that having obtained neither exemption from CSA through your petition, nor relief from a federal court, you have nevertheless engaged in activities in violation of the CSA, and consequently have failed to meet the operational test.

There is a high degree of consensus among courts that what carries most weight in distinguishing a church from other religious organizations is its associational role. Your members reside in various states and countries. Members do not come to your weekend D ceremonies on a regular basis. Their domiciles are widely scattered. The D sacrament is administered to only a handful of members on any weekend. Afterwards they disperse to their homes, and may not return for weeks, months, or not at all. Rather than relying for support on offerings of the faithful, you charge a small fee for membership, and a stiff fee every time someone receives the sacrament. Your activities resemble spiritual retreats, rather than worship services. The experience of those receiving the sacrament is intensely private, rather than communal, resembling meditation. You emphasize the healing properties of the sacrament along with its spiritual properties.

To be classified as a church, it is not sufficient that you declare yourself to be a church or that you conduct a few weekend retreats that members attend on an intermittent basis. As the court articulated in American Guidance Foundation, Inc., "Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church." You have not established that you have a body of believers or communicants that assembles regularly to worship. You have provided little evidence that you serve a regular congregation or conduct regular worship services. You have not fulfilled the associational role to be a church.

In Church of Eternal Life and Liberty, Inc. the court indicated that "A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith." You have not demonstrated that the principal means of accomplishing your religious purpose is to assemble regularly a group of individuals related by common faith and worship. Therefore, you have not fulfilled the associational role to be a church.

You are similar to the organizations in First Church of In Theo and Spiritual Outreach Society, where the extent to which the organizations brought people together to worship was incidental to its main function. In First Church of In Theo the court stated, "When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church." The court concluded that the organization "fail[ed] to satisfy the threshold criteria of communal activity necessary for a church." In Spiritual Outreach Society, the Tax Court was unpersuaded that "musical festivals and revivals...and gatherings for individual meditation and prayer by persons who don't regularly come together as a congregation for such purposes" was sufficient to satisfy the "cohesiveness factor which...is an essential ingredient of a 'church.'" The Tax Court held that the organization failed to satisfy the associational test. The Tax Court decision was affirmed by the 8th Circuit. The Court stated that some of the 14 criteria are of central importance. While the organization did meet some of the criteria, it did not meet enough. They failed to show they had an established congregation even though large numbers of people attended musical events on their property, nothing indicated that the participants considered it their church. See Spiritual Outreach Society.

Finally, in Foundation of Human Understanding the court found an organization that promoted spirituality through a particular form of meditation was not a church. The court referred to the 14 church characteristics published by the Service in the course of its factual findings, but ultimately decided the case by applying the associational test. The court stated that there was no evidence that the followers came together regularly to practice nor was there evidence that Foundation's religious practice required or promoted associational worship. Similarly, your members do not come together regularly to practice your religion. Three to four members at a time gathering for weekend ceremonies does not meet the associational test.

**Your position**
You did not receive any formal guidance from the DEA regarding your petition for the exemption to the CSA. The only guidance you received from the DOJ was the mailing address for the religious exemption and the regulations regarding the request. The exemption is still under review by the agency. Your position is that the guidance provided on the DEA website is an interim measure intended to provide guidance to potential applicants and does not carry the force of law. The prohibition is not found in either the United States Code or the Code of Federal Regulations. Relying on Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal, you also believe that are not required to wait for the exemption to be granted to conduct religious activities using D.

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

**Our response to your position**
The DEA provides a procedure whereby an organization can obtain a religious exemption to the CSA. The guidance provided to applicants on the DEA's website states that the use of the substance is prohibited until the exemption is granted. The procedure would be meaningless if the applicant could simply use D without the exemption. The court held in <u>Gonzales</u> that an organization does not have to apply for the exemption prior to seeking relief in the courts. You have not sought relief in the courts, nor have you received the exemption to the CSA, therefore, your use of D is illegal under federal law.

**Conclusion**
Based on the facts and information submitted, you are neither organized nor operated exclusively for exempt purposes. Your primary purpose of conducting activities utilizing D violates federal law and furthers a substantial nonexempt purpose. Therefore, you are not described in IRC Section 501(c)(3). Additionally, you do not meet the requirements for classification under Sections 509(a)(1) and 170(b)(1)(A)(i) as a "church" because you do not meet the associational test.

**If you agree**
If you agree with our proposed adverse determination, you don't need to do anything. If we don't hear from you within 30 days, we'll issue a final adverse determination letter. That letter will provide information on your income tax filing requirements.

**If you don't agree**
You have a right to protest if you don't agree with our proposed adverse determination. To do so, send us a protest within 30 days of the date of this letter. You must include:

- Your name, address, employer identification number (EIN), and a daytime phone number

- A statement of the facts, law, and arguments supporting your position

- A statement indicating whether you are requesting an Appeals Office conference

- The signature of an officer, director, trustee, or other official who is authorized to sign for the organization or your authorized representative

- The following declaration:

    **For an officer, director, trustee, or other official who is authorized to sign for the organization:**
    Under penalties of perjury, I declare that I have examined this request, or this modification to the request, including accompanying documents, and to the best of my knowledge and belief, the request or the modification contains all relevant facts relating to the request, and such facts are true, correct, and complete.

Your representative (attorney, certified public accountant, or other individual enrolled to practice before the IRS) must file a Form 2848, Power of Attorney and Declaration of Representative, with us if they haven't already done so. You can find more information about representation in Publication 947, Practice Before the IRS and Power of Attorney.

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K

We'll review your protest statement and decide if you gave us a basis to reconsider our determination. If so, we'll continue to process your case considering the information you provided. If you haven't given us a basis for reconsideration, we'll send your case to the Appeals Office and notify you. You can find more information in Publication 892, How to Appeal an IRS Decision on Tax-Exempt Status.

If you don't file a protest within 30 days, you can't seek a declaratory judgment in court later because the law requires that you use the IRC administrative process first (IRC Section 7428(b)(2)).

**Where to send your protest**
Send your protest, Form 2848, if applicable, and any supporting documents to the applicable address:

| U.S. mail: | Street address for delivery service: |
|---|---|
| Internal Revenue Service<br>EO Determinations Quality Assurance<br>Mail Stop 6403<br>P.O. Box 2508<br>Cincinnati, OH 45201 | Internal Revenue Service<br>EO Determinations Quality Assurance<br>550 Main Street, Mail Stop 6403<br>Cincinnati, OH 45202 |

You can also fax your protest and supporting documents to the fax number listed at the top of this letter. If you fax your statement, please contact the person listed at the top of this letter to confirm that they received it.

You can get the forms and publications mentioned in this letter by visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676). If you have questions, you can contact the person listed at the top of this letter.

**Contacting the Taxpayer Advocate Service**
The Taxpayer Advocate Service (TAS) is an independent organization within the IRS that can help protect your taxpayer rights. TAS can offer you help if your tax problem is causing a hardship, or if you've tried but haven't been able to resolve your problem with the IRS. If you qualify for TAS assistance, which is always free, TAS will do everything possible to help you. Visit www.taxpayeradvocate.irs.gov or call 877-777-4778.

We sent a copy of this letter to your representative as indicated in your power of attorney.

Sincerely,

*Stephen A. Martin*

Stephen A. Martin
Director, Exempt Organizations
Rulings and Agreements

cc: William A. Boatwright

Letter 4034 (Rev. 11-2018)
Catalog Number 47628K