**DAVIS**BROWN®
LAW FIRM

**William A. Boatwright**
BillBoatwright@davisbrownlaw.com
phone: 515-246-7804
Des Moines Office

July 13, 2020



_**VIA FAX & DELIVERY SERVICE**_

Internal Revenue Service
EO Determinations Quality Assurance
550 Main Street, Mail Stop 6403
Cincinnati, OH  45202

> **Re:    _Iowaska Church of Healing - Protest of Proposed Adverse Determination_**
> **_FEIN:  83-2192122_**

Dear Sir or Madam:

Enclosed please find the above named organization's Protest of the government's Proposed Adverse Determination dated June 16, 2020, a copy of which is also enclosed.  A courtesy copy of the Form 2848 that was filed with the original exemption application is also enclosed.

Very truly yours,

DAVIS, BROWN, KOEHN, SHORS & ROBERTS, P.C.

William A. Boatwright

WAB:pkm
Enclosures

cc:    Dado Kantarevic, President

#3199966

DAVIS BROWN KOEHN SHORS & ROBERTS P.C.

---

PHONE 515.288.2500     THE DAVIS BROWN TOWER, 215 IOᵀᴴ ST., STE. I300, DES MOINES, IA 50309
FIRM FAX 515.243.0654     THE HIGHLAND BUILDING, 420I WESTOWN PKWY., STE. 300, WEST DES MOINES, IA 50266
WWW.DAVISBROWNLAW.COM     THE AMES OFFICE, 2605 NORTHRIDGE PKWY., AMES, IA 500I0

**PROTEST OF PROPOSED ADVERSE DETERMINATION AND
REQUEST FOR APPEALS OFFICE CONFERENCE**

**IOWASKA CHURCH OF HEALING
FEIN: 83-2192122**

Iowaska Church of Healing (the "Organization") hereby protests the government's proposed adverse determination letter dated June 16, 2020 (the "Letter"), a copy of which is enclosed. In addition, the Organization hereby requests an Appeals Office conference with regard to its application for tax-exempt status under Internal Revenue Code § 501(c)(3) and this Protest of Proposed Adverse Determination.

IDENTIFYING INFORMATION

Iowaska Church of Healing
4114 - 27th Street
Des Moines, IA 50310
FEIN: 83-2192122
Daytime Phone: (515) 288-2500

STATEMENT OF FACTS, LAW AND ARGUMENT

*Statement of Facts*

The Organization has detailed the salient facts in its original application and its responses to the three additional Information Requests issued by the government. In addition, the Organization generally concurs with the government's description of the facts in its Letter, with several exceptions. First, in the second sentence of the final paragraph on Page 3, the government erroneously states that 10% of the Organization's activities include "spiritual *medication*". The Organization believes that this was a typographical error as it had described this activity as spiritual "meditation" in its original application. Given the nature of the application and the Organization's activities, however, correcting this error seems prudent. Next, the first sentence of the first paragraph on Page 4 of the letter incorrectly states, "[y]ou have held ceremonies twice a month for the last year or so." As the government correctly states later in that same paragraph, the Organization conducted a total of five (5) ceremonies over three weekends. These took place during the months of May, June and July of 2019. The Organization discontinued its sacramental ceremonies out of fear that, without the government's approvals, its members may be wrongfully subjected to arrest by law enforcement and criminal prosecution thereafter. In an abundance of caution, ceremonies were suspended.

#3198255

*Statement of the Law*

Beginning with the submission of its original application, and particularly in its response to the government's third Information Request dated February 4, 2020, the Organization has provided the government with an exhaustive statement of the law regarding the sacramental use of Ayahuasca. All of these previous submissions are incorporated herein by this reference. In summary, the United States Supreme Court has expressly recognized the sacramental consumption of Ayahuasca as a sincere and lawful exercise of one's religion under the First Amendment to the United States Constitution. *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Notably, the government conceded that the sacramental ceremonies performed in the *O Centro* case constituted a "sincere exercise of religion", and that its application of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. ("CSA"), would substantially burden that free exercise. In addition, the court in the *O Centro* case did not require the respondent church to first apply for or secure a religious exemption from the CSA from the Drug Enforcement Administration ("DEA") prior to requesting judicial relief from the government's impermissible burdening of its free exercise rights. This fact was central to a Native American Church's successful challenge to a "ripeness" argument made by the government in *Oklevueha Native American Church v. Holder*, 676 F.3d 829 (9th Cir. 2012). In addressing the government's argument that the plaintiff church had erred by failing to first apply for a religious exemption from the CSA before seeking judicial relief, the 9th Circuit Court of Appeals stated that:

> Likewise, we are unpersuaded by the Government's assertion that Plaintiffs' request for prospective relief is unripe because Plaintiffs did not request an exception to the CSA from the DEA … [t]he Government argues that we should require Plaintiffs to exhaust this administrative remedy, because doing so would allow the DEA to apply its expertise to Plaintiffs' claim, possibly moot the case if the claim is granted, and help build a record for judicial review.
>
> We decline, however, to read an exhaustion requirement into the RFRA where the statute contains no such condition, see 42 U.S.C. §§ 2000bb - 2000bb-4, and the Supreme Court has not imposed one. Indeed, the Supreme Court has reviewed a RFRA-based challenge to the CSA without requiring that the plaintiffs first seek a religious use exemption from the DEA. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal (citations omitted).* In doing so, it recognized that RFRA "plainly contemplates that *courts* would recognize exceptions [to the CSA] - that is how the law works."

*Oklevueha Native American Church*, 676 F.3d at 838.

The *O Centro* and *Oklevueha* opinions make it clear that it was not necessary for the churches involved in those cases to first secure a DEA exemption in order to enjoy the rights afforded them under the Free Exercise Clause of the First Amendment or to invoke the protections of the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq*. In

2

addition, the *Oklevueha* court pointed out that the United States Supreme Court had recognized the sacramental use of Ayahuasca as an exception to the CSA in the *O Centro* opinion.

The United States Constitution protects the free exercise of religion. U.S. Const. amend. I. Specifically, the First Amendment provides that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. *Id.* Congress reinforced this protection when it enacted the RFRA, which prohibits the federal government from burdening a person or organization's exercise of religion, "even if the burden results from a rule of general applicability," unless the government can demonstrate the burden furthers a compelling government interest, and is the least restrictive means of doing so. 42 U.S.C. § 2000bb–1(a), (b). "The least-restrictive means standard is exceptionally demanding." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728, 134 S. Ct. 2751, 2780 (2014).

The RFRA provides protection and a remedy system for those whose rights to freely exercise their religion are unduly burdened by government action. The rights protected by the statute, however, do not attach only upon the initiation of an action brought in the courts, as the government appears to argue, but rather have their origin in the Free Exercise Clause of the First Amendment. Indeed, Congress acknowledged the inherent nature of these rights under the First Amendment in the findings section of the RFRA when it stated that, "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution". 42 U.S.C. §§ 2000bb(a)(1).

*Argument*

The sacramental use of Ayahuasca is a sincere and legal religious activity protected by the Free Exercise Clause of the First Amendment to the United States Constitution, as confirmed by the United States Supreme Court in the *O Centro* case. In arguing that the Organization in the instant case would be conducting illegal activity by resuming its use of Ayahuasca in its sacred ceremonies, the government takes the erroneous position that to legally conduct these activities the Organization must first either: (i) secure a religious exemption from the CSA, or (ii) judicially confirm its right to the free exercise of religion under the First Amendment.

The government's position with regard to the former condition is directly contradictory to the United States Supreme Court's ruling in the *O Centro* case. By stating that the use of Ayahuasca is illegal unless and until the Church has secured a DEA exemption from the CSA, the government is attempting to make the same failed argument the government made in *O Centro*. In *O Centro*, like the instant case, the government conceded that the spiritual use of Ayahuasca was a valid exercise of the church's religion, but was nevertheless illegal under the CSA. The Supreme Court expressly rejected this argument and ruled that the respondent church's right to free exercise under the First Amendment was paramount and protected by the RFRA. It is therefore indisputable that it is not necessary for an entity to secure a DEA exemption before its right to the free exercise of religion attaches under the First Amendment. The government is therefore required to respect and honor the *O Centro* opinion and its component findings.

3

The government's second stated condition, that the Organization is required to secure judicial relief to convert its activities from illegal to legal, is also flawed. It defies logic to read the *O Centro* opinion and conclude that the only reason the use of Ayahuasca was found to be a legal and sincere exercise of religion was because a court challenge was brought by the respondent church to confirm it. Had the underlying activity been illegal or criminal, the Supreme Court would not have granted the relief the respondent sought. Rights of free exercise of one's religion are unalienable rights and are set forth in the Free Exercise Clause of the First Amendment. As such, no judicial pre-approval or confirmation of these rights is required. The government's argument that the Organization's activities are illegal unless it obtains a judicial ruling confirming its First Amendment rights is therefore without merit.

The government affirmatively states in its Letter that the Organization's activities are "strikingly similar" to those of the church in *O Centro*. Just as the government's argument that the Organization must satisfy one of two conditions to convert its activities from illegal to legal is without merit and contrary to *O Centro*, its conclusion that the Organization does not qualify for § 501(c)(3) status is therefore also without merit.

## PROPOSED RESOLUTION

The Organization concedes that satisfaction of the "associational test" for church status under Internal Revenue Code §§ 509(a)(1) and 170(b)(1)(A)(i) is problematic for the Organization because of the irregular attendance by members at its religious ceremonies. Irregular attendance, however, will be attributable to the cost and travel difficulties involved in attending ceremonies, and not to a lack of spiritual belief or devotion on the part of the Organization's members. The Organization is willing to withdraw its request for recognition as a "church" and to accept governmental recognition as a religious organization under Internal Revenue Code § 501(c)(3) and a public charity pursuant to Internal Revenue Code § 509(a)(2).

The Organization has no objection whatsoever to filing annual information returns with the government or to the government's ability to examine and regulate the Organization. Since its inception, the Organization has attempted to structure its activities with regulatory transparency and in compliance with all federal and state laws. In addition to seeking tax-exempt status under Internal Revenue Code § 501(c)(3), the Organization also applied for a religious exemption from the CSA from the DEA. In doing so, the Organization not only notified the Diversion Control Division of the DEA in Springfield, Virginia at the time it filed its religious exemption request, but also copied in local DEA offices in Iowa and Florida to apprise them of its establishment and intent to conduct religious ceremonies in those states. The Church also informed the Iowa and Florida Attorneys General of its intention to establish places of worship using the sacrament of Ayahuasca.

The Organization contacted Mr. William McDermott, the Assistant Administrator of the DEA Diversion Control Division in Springfield, Virginia, by letter dated July 1, 2020 to request an update on the status of its religious exemption request, which was filed February 28,2019. The Organization will forward the DEA's response as a supplement to this Protest once it has been received.

4

REQUEST FOR APPEALS OFFICE CONFERENCE

As previously stated, the Church hereby requests an Appeals Office conference with regard to its application for tax-exempt status under Internal Revenue Code § 501(c)(3) and this Protest of Proposed Adverse Determination.

Under penalties of perjury, I declare that I have examined this request, or this modification to the request, including accompanying documents, and to the best of my knowledge and belief, the request or the modification contains all relevant facts relating to the request, and such facts are true, correct and complete.

Dado Kantarevic, President

5